UNITED STATES v. BUFFALO PHAR-MACAL CO., Inc.

No. 68.

Circuit Court of Appeals, Second Circuit.

Dec. 3, 1942.

SWAN, Circuit Judge, dissenting in part.

Robert J. Whissel, of Buffalo, N. Y. (Samuel M. Fleischman, of Buffalo, N. Y., of counsel), for appellant.

George L. Grobe, U. S. Atty., of Buffalo, N. Y. (Robert M. Hitchcock, Asst. U. S. Atty., of Buffalo, N. Y., of counsel), for appellee.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

SWAN, Circuit Judge.

The appellant was prosecuted, together with Buffalo Pharmacal Company, Inc., a New York corporation of which he was general manager, for violations of section 301(a) of the Federal Food, Drug and Cosmetic Act, 21 U.S.C.A. § 331(a). Three counts of the informations were submitted to the jury. The first count was based on an interstate shipment on October 2, 1939, of a bottle of cascara compound which was charged to be misbranded, 21 U.S.C.A. § 352(a); the other two counts related to an interstate shipment on January 9, 1940, of a bottle of digitalis tablets, one of the counts charging adulteration, 21 U.S.C.A. § 351(c), and the other misbranding, 21 U.S. C.A. § 352(a). Each of the shipments was made in filling an order received through the mails by Buffalo Pharmacal Company from a physician resident in a state other than New York. The corporation had purchased the drugs from a wholesale manufacturer; it repackaged them for the shipments under attack. The appellant Dotterweich had no personal connection with either shipment, but he was in general charge of the corporation's business and had given general instructions to its employees to fill orders received from physicians. The jury found him guilty on all three counts. For some unexplainable reason it disagreed as to the corporation's guilt. The sentence imposed on the appellant was a fine of $500 on each count, with payment suspended on the second and third counts, and probation for 60 days on each count to run concurrently.

The bottle of cascara compound carried a label reading "1000 Tablets Cascara Compound * * * (Hinkle)," followed by a list of the ingredients, one of which was strychnine sulphate. The charge of misbranding was based on the fact that this ingredient had been removed from the formula for Hinkle pills stated in the official National. Formulary[1] promulgated January 1, 1939. The issue left to the jury was whether the label was false and misleading in that it would lead the purchaser or the general public to believe that the tablets contained only the ingredients designated

---

[1] See 21 U.S.C.A. § 321(j) and (n).

502

in the official formula for Hinkle pills. Since intention to violate the statute is immaterial in a charge of misbranding,[2] we think the jury's finding that the label was false and misleading was not unsupported by the evidence.

[3] The label on the bottle of digitalis tablets represented that each tablet possessed a potency of one U. S. P. unit of digitalis, whereas in fact analysis proved that the tablets were less than one-half of the represented potency. This was so far below the standard that findings of adulteration and misbranding would seem to be inevitable, unless the deterioration occurred after the bottle of tablets was shipped. It was shipped on January 9, 1940 and its contents were analyzed by government chemists in March 1940. While cross examination brought out that digitalis tablets may deteriorate in potency by lapse of time if not properly stored, there was some testimony to indicate that the bottle in question had been properly cared for. We cannot say that the evidence was insufficient to support the verdict of adulteration and misbranding.

■ Section 305 of the Act, set forth in the margin,[3] provides that before the Administrator reports a violation to any United States attorney for prosecution, "the person against whom such proceeding is contemplated" shall be given notice and a hearing. In the case at bar such notice was addressed only to the corporation. In response thereto the appellant appeared on behalf of the corporation. He contends that a notice addressed to him personally was a condition precedent to his lawful prosecution. The district judge ruled that the provision for notice and a hearing was an administrative direction to the Administrator rather than a jurisdictional requirement for criminal proceedings. We agree with this conclusion. Such was the authoritative construction placed upon a similar provision in the Food and Drugs Act of 1906, 21 U.S.C.A. § 11. United States v. Morgan, 222 U.S. 274, 32 S.Ct. 81, 56 L.Ed. 198; see also United States v. King & Howe, 2 Cir., 78 F.2d 693, 696. In our opinion the changes in phraseology introduced by the 1938 Act are not such as to render obsolete these decisions. This appears quite clearly from the Congressional debates. 83 Cong.Rec. pp. 7792, 7794, 75th Cong., 3d sess. Articles by certain commentators are cited as expressing the opposite view,[4] but we are constrained to disagree with them.

■ The appellant further urges that the jury's failure to convict the corporation is so inconsistent with the finding of guilt on the part of the appellant that the verdict against him cannot stand. Assuming that the statute includes within its prohibitions an agent who acts for his employer in shipping in interstate commerce misbranded or adulterated articles, the contention is without merit. No authority has been cited in support of the argument that failure to convict the principal will avoid the conviction of an agent who has committed all the elements of a crime. We think the usual principle is applicable that error cannot be asserted for inconsistency in the jury's verdict. See Dunn v. United States, 284 U.S. 390, 52 S.Ct. 189, 76 L.Ed. 356, 80 A.L.R. 161; United States v. Pandolfi, 2 Cir., 110 F.2d 736.

■ A more difficult question is presented by the appellant's contention that the statute is aimed only at punishment of the principal and not at punishment of an innocent agent who in good faith and in ignorance of the misbranding or adulteration takes part in an interstate shipment of food or drugs. Section 301, 21 U.S.C.A. § 331, prohibits "the following acts and the causing thereof," namely, "(a) The in-

---

[2] See Von Bremen v. United States, 2 Cir., 192 F. 904, 906, Weeks v. United States, 2 Cir., 224 F. 64, 68 and Strong, Cobb & Co. v. United States, 6 Cir., 103 F.2d 671, 674, construing the Food and Drugs Act of 1906, 21 U.S.C.A. § 1 et seq. That intention is not necessarily an element of the offense under the existing Act is made very clear by section 303, 21 U.S.C.A. § 333(a) and (b) where different penalties are provided for simple violations and for violations "with intent to defraud or mislead."

[3] 21 U.S.C.A. § 335. "Hearing before report of criminal violation. Before any violation of this chapter is reported by the Administrator to any United States attorney for institution of a criminal proceeding, the person against whom such proceeding is contemplated shall be given appropriate notice and an opportunity to present his views, either orally or in writing, with regard to such contemplated proceeding."

[4] See "A Treatise on the Law of Food, Drugs and Cosmetics," 1942, p. 737; Law & Contemporary Problems, published by the School of Law of Duke University, 1939, Vol. 6, p. 74.

troduction or delivery for introduction into interstate commerce of any food, drug, device, or cosmetic that is adulterated or misbranded." Section 333(a) of Title 21 declares that "any person" who violates any of the provisions of section 331 shall be guilty of a misdemeanor and on conviction be subject to imprisonment or fine or both. The Act defines the term "person" to include "individual, partnership, corporation, and association." 21 U.S.C.A. § 321(e). Who is the person causing "the introduction or delivery for introduction" into interstate commerce of a misbranded drug? Is the clerk who innocently packs or ships it guilty of the offense, as well as the employer for whom he works? While the statutory language seems literally to include all who have any part in causing delivery for introduction into interstate commerce, there are serious objections to so construing it. Subsection (c) of 21 U.S.C.A. § 333 provides: "No person shall be subject to the penalties of subsection (a) of this section * * * for having violated section 331(a) or (d), if he establishes a guaranty or undertaking signed by, and containing the name and address of, the person residing in the United States from whom he received in good faith the article, to the effect, in case of an alleged violation of section 331(a), that such article is not adulterated or misbranded, within the meaning of this chapter designating this chapter * * *." Obviously such a guaranty, if given, will be obtained by the drug dealer, not by his clerk who may later deliver the article for shipment in interstate commerce; nor is such clerk literally within the protection of the quoted section, since he is not the one who "received" the article from the guarantor. It is difficult to believe that Congress expected anyone except the principal to get such a guaranty, or to make the guilt of an agent depend upon whether his employer had gotten one. The agent's guilt, like his principal's, must be independent of any scienter under section 331(a). It would be extremely harsh to charge him criminally with the risks of the business as the drug dealer is himself charged. A majority of the court is of opinion that this cannot have been the congressional intent and that the statute must be construed to mean that only the drug dealer, whether corporation or individual, is the "person" who causes the "introduction" or "delivery for introduction" of misbranded or adulterated drugs into commerce. In support of this con-

clusion the appellant adverts to the omission from the present Act of a provision which appeared in the 1906 Act in 21 U.S.C.A. § 4. This declared that in construing and enforcing the provisions of sections 1 to 15 of Title 21 "the act, omission, or failure of any officer, agent, or other person acting for or employed by any corporation * * * within the scope of his employment or office, shall in every case be also deemed to be the act, omission, or failure of such corporation * * * as well as that of the person." In our opinion the omission of this provision adds nothing to the argument already developed; it was doubtless omitted as unnecessary because it states an obvious general principle of agency.

The foregoing discussion has proceeded upon the assumption that if the statute is applicable to the appellant it must also apply to a shipping clerk or any menial employee who was instrumental in causing the forbidden shipment, for we can find no basis in the statutory language for drawing a distinction between agents of high or low rank. We are not, however, to be understood to hold that under no circumstances could an individual conducting a drug business in corporate form be subjected to the penalties of section 331 (a). If an individual operated a corporation as his "alter ego" or agent he might be the principal; but the evidence hardly went so far as to establish that such was the relationship between the appellant and his corporation and in any event his guilt was not made to turn on any such issue. Accordingly his conviction must be reversed.

The views above expressed in respect to the construction of the statute are those of a majority of the court. I am not in accord with them. I believe that the language of sections 331(a) and 333(a) is so inclusive as to render liable all persons who take part in causing a shipment in interstate commerce of misbranded or adulterated articles, and that any insufficiency in the protection afforded an agent by section 333(c) is not an adequate reason for limiting the statutory prohibitions to the dealer. The possibility that a literal interpretation of the statute may lead to the prosecution of insignificant agents rather than their employers is not, I believe, a serious risk and is a matter Congress was willing to leave to the good sense of prosecuting officials and trial juries. See United States v. Buffalo Cold Storage Co., D.

504

C.W.D.N.Y., 179 F. 865, 867, where a warehouseman who innocently shipped pursuant to instructions was convicted under the 1906 Act; see also the charge given by Judge Grubb in United States v. Mayfield, D.C.Ala., 177 F. 765.

Judgment reversed.