James L. FIORE, Jr., Appellant,

v.

UNITED STATES of America, Appellee.

No. 199, Docket 81–2432.

United States Court of Appeals, Second Circuit.

Argued Sept. 28, 1982.

Decided Dec. 13, 1982.

Zulima V. Farber, Lowenstein, Sandler, Brochin, Kohl, Fisher & Boylan, P.C., Roseland, N.J., for appellant.

Warren Neil Eggleston, Asst. U.S. Atty., S.D.N.Y., New York City (John S. Martin, Jr., U.S. Atty., S.D.N.Y., Gerard E. Lynch, Asst. U.S. Atty., New York City, of counsel), for appellee.

Before FEINBERG, Chief Judge, and OAKES and WINTER, Circuit Judges.

OAKES, Circuit Judge:

This appeal is from a judgment of the United States District Court for the Southern District of New York, Robert J. Ward, Judge, denying a petition for correction of sentence. The petition, brought under 28 U.S.C. § 2255, claims that appellant's probation was improperly conditioned on his payment of a fine imposed upon his corporation which was in excess of the maximum fine to which he was individually subject and which he was sentenced to pay. The condition is said to be illegal because it increases the maximum penalty permitted by statute. We agree with appellant's contention and reverse.

James L. Fiore, Jr., an accountant, commenced a laboratory testing corporation, Bucks County Research Institute, Inc. (BCRI), the business of which was to perform clinical studies and research concerning over-the-counter drugs. Fiore was president, secretary, sole shareholder and only full-time employee of BCRI. He obtained contracts with Vicks Division Research and Development of New York (Vicks) to do clinical studies on certain over-the-counter cough mixtures, cold pills, liquids and nasal spray and apparently followed the practice of a predecessor laboratory testing concern in paying "consulting fees" to a Vicks employee in charge of offering and accepting bids for such contracts. BCRI then submitted test results to Vicks that were not achieved pursuant to Vicks' test performance instructions. BCRI submitted clinical test reports representing that a particular doctor who was a qualified medical investigator had performed the

tests when in fact the tests were performed by another doctor who lacked appropriate accreditation and qualification in the Commonwealth of Pennsylvania. The signature of the qualified doctor was evidently forged on the test results, although this does not appear in the Rule 11 allocution. When the tests were compared to those of other testing laboratories Vicks conducted an intracorporate investigation which led to Fiore's discovery.

Fiore was charged with a violation of 21 U.S.C. § 331(b) prohibiting the "adulteration or misbranding of any food, drug, device or cosmetic in interstate commerce," the violation of which is a misdemeanor punishable by a maximum fine of $1,000 and a maximum term of imprisonment of one year. BCRI was charged with making false statements in a matter within the jurisdiction of the United States Food and Drug Administration in violation of 18 U.S.C. § 1001, a felony punishable by a maximum fine of $10,000 in the case of a corporation. Fiore pleaded guilty to the charges against him, and, as an officer of BCRI, pled guilty for the corporation. The sentence as to the corporate defendant was that it pay a sum of $10,000. Fiore's sentence was that he pay a fine of $1,000 and the imposition of the sentence was suspended and the defendant placed on probation for a period of three years on the following terms and conditions:

1. That the defendant pay the fine of $1,000 in a lump sum;

2. That the defendant pay in full the fine imposed on Bucks County Research Institute, Inc. in installments arranged through the Probation Department; and

3. That the defendant henceforth not take any role, whether it be direct or indirect, in the operation of a medical testing laboratory.

No objection to the sentence was made or appeal taken. In the roughly seven months after imposition of the sentence only $408.81 of BCRI's fine was paid and the Probation Department petitioned for revocation of probation when Fiore declined to make further payments. He claimed that he had been misadvised by prior counsel that he was not required to pay the fine. He then acknowledged his obligation to commence paying installments and paid an additional $1600. Fiore then filed the instant petition which was denied in November of 1981.

■ The governing statute is 18 U.S.C. § 3651 which provides in pertinent part as follows:

Upon entering a judgment of conviction of any offense not punishable by death or life imprisonment, any court having jurisdiction to try offenses against the United States when satisfied that the ends of justice and the best interest of the public as well as the defendant will be served thereby, may suspend the imposition or execution of sentence and place the defendant on probation for such period and upon such terms and conditions as the court deems best.

. . . .

While on probation and among the conditions thereof, the defendant—

May be required to pay a fine in one or several sums; and

May be required to make restitution or reparation to aggrieved parties for actual damages or loss caused by the offense for which conviction was had; and

May be required to provide for the support of any persons, for whose support he is legally responsible.

This statute is the only source of the court's power to suspend the imposition or execution of sentence. *United States v. Murray*, 275 U.S. 347, 357, 48 S.Ct. 146, 149, 72 L.Ed. 309 (1928); *Ex Parte United States*, 242 U.S. 27, 37 S.Ct. 72, 61 L.Ed. 129 (1916); *United States v. Beacon Piece Dyeing & Finishing Co.*, 455 F.2d 216, 216–17 (2d Cir. 1972); *United States v. Ellenbogen*, 390 F.2d 537, 541 (2d Cir.), *cert. denied*, 393 U.S. 918, 89 S.Ct. 241, 21 L.Ed.2d 206 (1968). Under the statute the sentencing court's discretion to set the conditions of probation is broad, the validity of conditions being reviewable only upon abuse of discretion. *United States v. Pastore*, 537 F.2d 675, 681 (2d Cir.1976). *See also United States v.*

*Alarik,* 439 F.2d 1349, 1351 (8th Cir.1971). The sentencing court may not, however, go beyond the plain language of section 3651, *see United States v. Temple,* 372 F.2d 795, 799 (4th Cir.1966), *cert. denied,* 386 U.S. 961, 87 S.Ct. 1024, 18 L.Ed.2d 110 (1967) (statute permitting punishment by fine *or* imprisonment does not permit fine and probation), nor may the court exceed the limitation that the conditions imposed must bear " 'a reasonable relationship to the treatment of the accused and the protection of the public.' " *Pastore, supra,* at 681; *Higdon v. United States,* 627 F.2d 893, 898–99 (9th Cir.1980); *United States v. Pierce,* 561 F.2d 735, 739 (9th Cir.1977), *cert. denied,* 435 U.S. 923, 98 S.Ct. 1486, 55 L.Ed.2d 516 (1978). Thus, appellate courts have upheld conditions of probation that are tailored to serve the rehabilitation of the defendant and the protection of the public. *E.g., United States v. Margala,* 662 F.2d 622 (9th Cir. 1981) (defendant convicted of stock fraud reasonably required to forfeit retirement benefits acquired from defrauded company after fraud set in motion); *United States v. Tonry,* 605 F.2d 144 (5th Cir.1979) (defendant convicted of repeated violations of Federal Election Campaign Act reasonably forbidden to engage in political activity while on probation); *United States v. Miller,* 549 F.2d 105, 107 (9th Cir.1976) (defendant convicted of alcohol-related transgressions reasonably forbidden to consume alcohol while on probation); *Malone v. United States,* 502 F.2d 554 (9th Cir.1974) (defendant convicted of gun running to the Irish Republic reasonably forbidden to belong to Irish Catholic organizations or groups or to visit any Irish pubs); *Porth v. Templar,* 453 F.2d 330, 334 (10th Cir.1971) (defendant convicted of failure to file tax returns reasonably forbidden

to make public speeches encouraging income tax violations). And, conversely, courts have set aside conditions that are unreasonably excessive or are unrelated to the goals of probation. *See Pastore, supra,* at 679 (citing cases); *e.g., Matter of Hernandez,* No. 76757 (Cal.Super.Ct., Santa Barbara County, June 8, 1966) (requiring sterilization of unwed mother convicted· of narcotics violation); *Springer v. United States,* 148 F.2d 411, 415–16 (9th Cir.1945) (requiring blood donation of defendant convicted of Selective Service Act violation). *See also United States v. Clovis Retail Liquor Dealers Trade Association,* 540 F.2d 1389, 1390 (10th Cir.1976) (requiring defendant in criminal antitrust case to pay reparations to party not specifically harmed by violation, e.g., county alcoholic rehabilitation organization).

▉ Implicit in the limitations on the permissible conditions of probation are two others suggested by the $10,000 condition imposed on Fiore in this case. First, it is not permissible to require a defendant to pay the penalty or serve the term of a codefendant as a condition of probation. After all the efforts that the courts make to ensure that defendants are not mistakenly or maliciously convicted for crimes that others have committed, it would be incongruous were it permissible to compel a defendant, once convicted of his misdeeds, to suffer penalties for another's wrongdoings as well as his own. It is true that Fiore is president, secretary, sole stockholder and the only full-time employee of that co-defendant. To the extent that Fiore caused or neglected to prevent the fraud by BCRI, it would have been entirely proper that he be convicted for that fraud.[1] But the de-

---

1. *See, e.g., United States v. Park,* 421 U.S. 658, 670–73, 95 S.Ct. 1903, 1910–12, 44 L.Ed.2d 489 (1975) (upholding conviction under Food and Drug Act of corporation president for exposing food in interstate shipment to contamination). In *United States v. Dotterweich,* 320 U.S. 277, 282, 64 S.Ct. 134, 137, 88 L.Ed. 48 (1943), the Supreme Court reversed *United States v. Buffalo Pharmacal,* 131 F.2d 500 (2d Cir.1942) because the lower court's interpretation of the 1938 Food, Drug, and Cosmetic Act would allow that "the penalties of the law could be

imposed only in the rare case where the corporation is merely an individual's *alter ego.*" The Act may therefore be applied to find liability in cases where responsibility is far more diffuse than in a one person company. *United States v. Park, supra.* Yet Fiore could probably have been prosecuted even under the narrow application of the Act struck down in *Dotterweich.* And had Fiore been prosecuted for and pleaded guilty to his own violation with the intent to defraud or mislead, he would have been subject

gree of Fiore's control and complicity in having tests performed by unqualified persons in exchange for payments to a Vicks official is a matter of fact not necessarily conceded by Fiore or tried by the court below.[2] A presentence report is not the place to decide a defendant's vicarious liability for the acts of another; only if Fiore had been proven to be the cause of BCRI's wrongdoing could he be visited with the penalties for it.

■ Second, the $11,000 total penalty for Fiore's misdemeanor conviction suggests the additional obvious limitation that sentencing courts may not impose conditions of probation that circumvent the statutory maximum penalties set by Congress. *See Higdon, supra,* at 898 ("Nor may probation conditions be the vehicle for circumvention of statutory sentencing limits."); *United States v. Atlantic Richfield Co.,* 465 F.2d 58, 61 (7th Cir.1972); Note, "Structural Crime and Institutional Rehabilitation: A New Approach to Corporate Sentencing," 89 Yale L.J. 353, 368–69 & n. 95 (1979). *But see United States v. Logan,* 505 F.2d 35 (5th Cir.1975) (upholding condition that defendant pay $10,000 bail forfeiture for bail-

jumping crime).[3] Though the statute allows that the defendant may, as a condition of probation, be required to pay "a" fine, it would not be proper to read this as an implicit waiver of the statutory maximum fines set by Congress. The Probation Act also allows the sentencing court to require a defendant to pay restitution or reparation for "actual damages or loss" to those "aggrieved" "by the offense for which the conviction was had," or to provide support to those persons "for whose support he is legally responsible." Neither of these provisions, however, allow the sentencing court to impose fees and charges at will on the defendant. The defendant plainly may not be required to support persons—corporate or natural—of the court's choosing, but only those for whom he is already responsible. Similarly, the defendant may not be required to pay reparations to persons not aggrieved by his crimes, or simply to the community at large. *Clovis, supra,* at 1390. Nor may the defendant be required to pay reparations for crimes of which he has not been specifically convicted. *United States v. Follette,* 32 F.Supp. 953, 955 (E.D.Pa. 1940). These protections would be a sham if sentencing courts could set terms of pro-

to imprisonment for up to three years and a fine of $10,000. 21 U.S.C. § 333(b).

2. Two things are clear as regards Fiore's actual conviction. First, the $10,000 BCRI fine is clearly listed as a condition of his probation on the 18 U.S.C. § 371 count even though the report recording this disposition explicitly notes that the maximum sentence for this offense is "1 year and/or $1000." Second, the government did prosecute and convict Mr. Biernacki, Fiore's predecessor in the BCRI scheme, for a felony under 18 U.S.C. § 1001, the same statute under which BCRI was convicted. Had the government wanted to prosecute Fiore for BCRI's crimes, it could have done so, but the record suggests weaknesses in this strategy. Though the government alleges that BCRI was guilty in several instances of making false statements to the government, covering a range of over-the-counter drugs, Allocution Tr. at 18, Fiore only admitted to filing falsely certified reports on antihistamines and this was the only basis of his plea. *Id.* at 19; Presentence Report at 3. Thus Fiore was not necessarily the alter ego of BCRI in the other falsehoods that were the basis of the charge against it. *The facts suggest that he was not.*

Fiore was not the only author of BCRI's crimes. The other officers of BCRI approved of the wrongdoing, Allocution Tr. at 13, and, if they were reimbursed for their services, presumably benefitted from it, too. Nor was Fiore the sole beneficiary of BCRI's crime. Even though Fiore was the sole shareholder of BCRI, the *government nowhere suggests that Fiore was the only individual paid by BCRI.* In fact, the charge depends in part on the alleged kickback scheme with a Vicks official and on payments made to Dr. Romillo. In addition, Mr. Biernacki, who sold the advantageous arrangement with Vicks to Fiore, also apparently benefitted from the increased value of BCRI as a result of the scheme.

3. The *Logan* court did not discuss the legality of the condition as a possible fine in excess of the $5000 maximum set by the statute forbidding bail jumping, 18 U.S.C. § 3150. That court's decision does not conflict with the judgment here, however, because the payment of the $10,000 forfeiture in *Logan* may be construed as restitution to the surety who would otherwise be victimized by Logan's absence.

bation that exceed the amount due as a fine, support or reparation.[4]

■ Thus, Fiore's corporate fine runs afoul of two controlling axioms of criminal jurisprudence—that a defendant may not be sentenced for the crimes of another and that courts may not sentence a defendant to a term or in an amount which exceeds the maximum penalty established by the legislature. A departure from these principles would require an extraordinary justification, one which would serve public purposes of great importance and which would be limited carefully to the exigency that gave rise to the exception so that it would not routinely void the high principles that individuals may be punished only for their crimes and then only to the extent that the legislature has allowed. The government's proposed justification for Fiore's sentence would have precisely this ill-effect. The probationary condition could be defended as reasonably related to the protection of the public and to Fiore's rehabilitation because the stiffer $10,000 penalty arguably may deter others or "rehabilitate" Fiore more than the requirements that Fiore pay $1000 and no longer participate in medical testing. Gov't Br. at 9–10. While this argument would link the higher penalty to the goals of probation, it proves too much because the higher penalty would deter others from committing Fiore's crime even if Fiore were utterly innocent of BCRI's wrongdoing—disregarding the requirement the defendants may be punished only to the extent of their own misdeeds—and it would apply in every case of probation—thereby dispensing with the safeguard that courts must tailor the conditions of probation to the rehabilitative needs of particular defendants. Because the condition of probation imposed here pays heed to neither of these strictures, the sentence must be modified.

■ The government has also argued that the $10,000 excess fine may be defended on the ground that it was tailored to a rehabilitative end because Fiore would feel that he had "beaten the system" if he could deplete the corporation's assets and leave the fine unpaid after Fiore had reaped the benefits of BCRI's crimes. This argument fails because it proves too little rather than too much. Fundamentally, it fails to prove that Fiore was the sole author or beneficiary of BCRI's crimes, see supra note 2, and passes over in silence the fact that the government did not prosecute Fiore for BCRI's crime from which it claims he benefitted.[5] Tellingly, the argument proves too

---

**4.** *United States v. Santarpio,* 560 F.2d 448 (1st Cir.1977), upholding as a condition of probation a requirement that the defendant pay attorney's fees for his court appointed attorney in addition to his fine, is not contrary authority. The defendant was liable for the fees under the federal recoupment statute, 18 U.S.C. § 3006A(c) and (f), which allows a magistrate or court to require repayment "as the interests of justice may dictate" if the funds are available. Unlike Fiore's case, the court below had found the defendant liable for the fees. Moreover, the authority of *Santarpio* is questionable. The Fifth Circuit in *United States v. Jimenez,* 600 F.2d 1172 (5th Cir.1979), rejected a requirement that the defendant pay attorney's fees as a condition of probation where the repayment was not "an integral part of the district court's judgment of what punishment was best for the defendant and for society." *Id.* at 1175. *See also United States v. Turner,* 628 F.2d 461 (5th Cir.1980).

Similarly inapposite is *United States v. Margala,* 662 F.2d 622 (9th Cir.1981), upholding as a condition of probation that a defendant forfeit retirement pension benefits and stocks ac-quired through the corporation he used as the instrument of his fraud. These assets, acquired "long after the scheme to defraud the public shareholders was set in motion," *id.* at 627, could easily be covered by the restitution clause of § 3651. Thus, these forfeitures were visibly connected to the harms caused by the crimes for which Margala was convicted, unlike Fiore's fines which seem clearly to be linked to a crime for which he was not even prosecuted. Furthermore, the conditions imposed on Margala were upheld because they might have served a rehabilitative purpose by severing his connection to the offending corporation. *Id.* By forcing Fiore to undertake BCRI's penalties, this would not occur.

**5.** The government tells us that prior to sentencing Fiore had substantially liquidated the corporate assets and apparently taken all remaining cash, leaving BCRI with assets of about $1000 and liabilities in excess of $30,000. Nothing that we know prevents the government from taking appropriate steps if, as may be the case, transfers from the corporation were made in fraud of creditors.

little when it asserts that punishing defendants for crimes of which they have not been convicted or for acts which have not been admitted or proven serves the goals of rehabilitation. On the contrary, the principles which govern our criminal jurisprudence hold just the opposite, and if the excess fine is upheld, it will not be the defendant but the government that has "beaten the system."[6]

The appeals court must choose "between [either] eliminating the objectionable condition and letting the sentence stand as modified, [or] remanding for resentencing in accordance with our opinion." *United States v. Jimenez,* 600 F.2d 1172, 1175 (5th Cir. 1979); *see also United States v. Turner,* 628 F.2d 461, 467 (5th Cir.1980), *cert. denied,* 451 U.S. 988, 101 S.Ct. 2325, 68 L.Ed.2d 847 (1981). Remand could be proper because the $10,000 condition may have been an integral part of the misdemeanor sentence: a prison term was suspended, Fiore could be both fined and imprisoned under the statute, and some penalty in addition to the $1000 fine may have been appropriate in lieu of incarceration, if no prison sentence were imposed.[7] On the other hand, Judge Ward said that the sentence given to Fiore was appropriate in part "because of the strains which are attendant upon a person who does not have a criminal record" and because a more culpable co-defendant had received only a probationary term, suggesting that no prison term was contemplated. Moreover, a rule of remand in such cases could be an invitation to impose prison terms on defendants whose imprisonment had not been considered appropriate before. *Cf. United States v. DeLeo,* 644 F.2d 300, 302 (3d Cir.1981) (sentencing court cannot impose fine as condition of probation after excess restitution revoked and period for sentencing has passed). Forcing defend-

ants who raise valid claims to take such a gamble could "chill" the assertion of defendant's rights. *See United States v. De-Leo, supra.* We therefore simply strike the illegal condition.

Judgment reversed.

FEINBERG, Chief Judge (dissenting):

I respectfully dissent.

Appellant Fiore pleaded guilty, on behalf of both himself and the corporation he owned and controlled as president and sole shareholder, to charges arising out of his scheme to defraud the Food and Drug Administration (the FDA). The issue before us is whether the experienced sentencing judge in this case abused his considerable discretion under 18 U.S.C. § 3651 by including one particular condition among those that were to govern Fiore's probation. That condition is the requirement that appellant pay the fine imposed on the corporation. The language of the probation statute provides no explicit check on the judge's power to impose "such terms and conditions as the court deems best." 18 U.S.C. § 3651. It does not, as appellant contends, limit those terms or conditions to the examples enumerated in the paragraphs that follow the quoted language. *United States v. Pastore,* 537 F.2d 675, 681 (2d Cir.1976). Thus, we may overturn the condition imposed in this case only if it constitutes an abuse of discretion. As the majority notes, the controlling test is set out in *Pastore,* supra: "[J]udicial discretion on conditions of probation is limited by the requirement that they bear 'a reasonable relationship to the treatment of the accused and the protection of the public.'" Id. at 681.

The condition at issue here reflects Judge Ward's concern for the protection of the public and the rehabilitation of Fiore. At

---

**6.** The government also suggests that because BCRI has substantial liabilities and would be unable to pay the fine it is reasonable to make Fiore liable so that the government may collect the fine. Gov't Br. at 8. On this rationale, it would be equally reasonable to make any wealthy person pay the fine, but that person, like Fiore, has not been convicted of BCRI's

crime and equally should not be called upon to pay for it.

**7.** On imposing a more severe sentence on resentencing, *see North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969); *McClain v. United States,* 676 F.2d 915 (2d Cir.1982); *United States v. Busic,* 639 F.2d 940 (3d Cir.1981).

the sentencing hearing, the judge expressed his concern that Fiore's crime was a serious one, presenting a threat to the public health and to the public trust in FDA-approved drugs. The judge felt that the offense warranted a term of imprisonment, especially for the purpose of general deterrence. But because the originator of the kickback scheme, whom the government considered more culpable than Fiore, had been sentenced by another judge to probation only, Judge Ward felt constrained to place Fiore on probation as well. In imposing a sentence that was lighter than he would have given absent the need for uniformity, Judge Ward must have been concerned about the effect this would have on Fiore's rehabilitation. According to information presented to the judge, in the two years prior to the indictment Fiore had received almost $18,000 in income from the corporation, but by the time of sentence the corporation was hopelessly insolvent and had almost no assets. Thus, it appears that after using his company to defraud the FDA, Fiore depleted its assets to the point where it was unable to pay the $10,000 fine to which his scheme had exposed it. If Fiore could get away with this, suffering only the relatively light sentence of a $1,000 fine and a three-year term of probation on the condition that he not be involved with a medical testing laboratory, he would surely be inclined to view his offense as a minor one. Furthermore, the public trust in the protection afforded by FDA testing of drugs would certainly be eroded if a man who abused that trust were permitted to escape with a sentence that Judge Ward considered inadequate for general deterrence.

In view of these considerations, it seems to me that it was perfectly reasonable for the sentencing judge to require that Fiore ensure payment of the fine imposed on the corporation. When the judge denied the § 2255 petition that is the basis of this appeal, he endorsed the following on the papers:

> In the Court's view, the special condition of probation that petitioner pay in full the fine imposed upon Bucks County Research Institute, Inc., a corporation of which he was the sole stockholder and only full-time employee, is authorized by 18 U.S.C. § 3651. Moreover, under the facts of this case, the special condition was appropriate and well within the discretion of the Court.

It is significant that the judge noted that Fiore was the "sole stockholder and only full-time employee" of the corporation, which had been fined $10,000. The emphasis on the unusual "facts of this case" and the reference to payment of "the fine imposed upon" the corporation that Fiore controlled indicate to me that the judge viewed the condition as a guarantee—if the corporation had had the assets to pay the $10,000, Fiore would not have been required to do so.

Viewed in this manner, this condition is far less "unusual and severe," *Pastore,* supra, 537 F.2d at 681, than many others that have been upheld, including those cited by the majority. See, e.g., *Malone v. United States,* 502 F.2d 554 (9th Cir.1974) (defendant convicted of illegal export of firearms to Republic of Ireland forbidden as condition of probation to belong to Irish organizations or Irish Catholic organizations, to accept employment by any Irish organization and to visit Irish pubs). See also *United States v. Kohlberg,* 472 F.2d 1189 (9th Cir.1973) (defendant pleading guilty to mailing obscene matter given probation on condition, inter alia, that he not associate with any known homosexuals). I do not suggest that these sentences are models to be followed, and I recognize that the judge's discretion is not unlimited; that is why we laid down the rule quoted above in *Pastore.* But unlike the condition struck down in that case and in the others cited by the majority, the condition at issue here is clearly related to the offense, as well as to the protection of the public and the rehabilitation of defendant.

In short, the condition that Fiore pay his corporation's fine is a far cry from the sort of flagrant abuse of discretion that required reversal in other cases. It is instead a sensible attempt by a seasoned trial judge to make the conditions of probation serve

the purposes of the probation statute as applied to this not inconsiderable white collar crime. Because I find that the challenged condition meets the requirements of *Pastore,* I would affirm.