UNITED STATES of America, Appellee,

v.

Jo Ann TOLLA, Defendant-Appellant.

No. 1388, Docket 85–1091.

United States Court of Appeals, Second Circuit.

Argued July 17, 1985.

Decided Jan. 9, 1986.

Harold James Pickerstein, Chief Asst. U.S. Atty., Bridgeport, Conn. (Alan H. Nevas, U.S. Atty., D. Conn., New Haven, Conn., of counsel), for appellee.

Andrew B. Bowman, Westport, Conn., for defendant-appellant.

Martin Margulies, Bridgeport, Conn., submitted a brief for amicus curiae Connecticut Civil Liberties Union.

Before PIERCE and PRATT, Circuit Judges, and STEWART, District Judge.*

STEWART, District Judge.

On January 7, 1985, following a plea of *nolo contendere*, appellant Jo Ann Tolla was convicted of income tax evasion in violation of 26 U.S.C. § 7201. The sole issue presented on this appeal is whether the United States District Court for the District of Connecticut (Eginton, *Judge*) abused its discretion in directing appellant to refrain from teaching young people as a condition of her one-year probation. Appellant contends that this condition of probation bears no reasonable relationship to the goals of probation, and that its imposition was improper. Since we disagree with appellant's contention, we affirm the District Court.

## BACKGROUND

On April 10, 1984, a federal grand jury sitting in Connecticut returned a seven-count indictment charging appellant Jo Ann Tolla and her husband Charles M. Tolla, Jr. with income tax evasion in violation of 26 U.S.C. § 7201. Counts Five, Six and Seven of the indictment alleged that on September 10, 1981, during a question and answer session with an agent of the Internal Revenue Service, appellant made false statements under oath in order to conceal reportable income and evade income taxes that she and her husband owed for the calendar years 1977, 1978 and 1979.

On January 7, 1985, appellant pled *nolo contendere* to Count Six of the indictment.

During the September 10 session with the IRS agent, appellant furnished the basis for Count Six when she falsely denied under oath that in 1978, she and her husband had hired outside contractors to install a swimming pool and landscape the grounds of their home, that they had engaged the services of an interior decorator, and that they had made large purchases of household furnishings. According to the Government, the failure to report the income expended on these goods and services enabled the Tollas to evade the payment of more than $20,000 in income taxes. At the January 7 hearing, the Government advised the court that pursuant to its plea agreement with appellant, it would recommend that Counts Five and Seven be dismissed, and that appellant not be sent to prison. The court accepted appellant's plea and entered a finding of guilty against her with respect to Count Six of the indictment.

On February 28, 1985, Judge Eginton sentenced appellant to three years in prison. In accordance with the Government's recommendation, however, he suspended execution of the sentence, placed appellant on probation for three years, and directed her to perform 300 hours of community service. He also directed that as a further condition of her probation, appellant refrain from teaching religious education to young people.

Prior to sentencing, appellant's pastor at St. Gabriel's Roman Catholic Church as well as nuns with whom she worked and studied had written letters to the judge extolling appellant's dedication to her family and church and urging the judge to exercise leniency in sentencing her. Therefore, in imposing the restriction on her teaching activities, the judge was aware that appellant was pursuing a degree in religious education through the Archdiocese of Bridgeport and was teaching on a voluntary basis in St. Gabriel's Religious Education Program. He was also aware

---

* Honorable Charles E. Stewart, Jr., Senior District Judge, Southern District of New York, sitting by designation.

that appellant's pastor had recently offered her the paid position of Program Director. In explaining his sentencing decision, the judge directed his remarks in large measure to those members of Mrs. Tolla's religious community who had written on her behalf. He emphasized the seriousness of the crime of perjury. He pointed out that if he had sent appellant to prison, a step he had rejected only out of concern for her children, she would have been unable in any event to teach religious education. Finally, he observed that "it is entirely the wrong image for me * * * to let an admitted and flagrant repeated perjurer give children religious education or any other type of education."

Subsequent to the filing of a notice of appeal on March 8, 1985, the judge advised the parties that he wished to resentence appellant and scheduled a second sentencing hearing for March 27, 1985. On that same date, appellant filed a motion pursuant to Rule 35 of the Federal Rules of Criminal Procedure seeking a reduction in sentence, including modification of the special probation condition originally imposed by the court. The motion was accompanied by a letter from appellant in which she expressed remorse for her crime and gratitude to the judge for not sending her to prison. She also advised the judge that she had discussed the circumstances of her crime with her pastor, and that, despite his knowledge over a three-year period of the on-going IRS investigation and of her subsequent conviction, he had still offered her the position of Religious Education Director at St. Gabriel's. Finally, appellant asked the judge to lift his prohibition against her teaching of religious education during the period of her probation.

At the March 27 hearing, the judge informed appellant that he had originally intended to prohibit her from teaching young people, not from teaching religious education, and, as a result, had declined to sign his initial judgment. In addressing the

merits of appellant's Rule 35 motion, he acknowledged that it raised issues that he had not considered at the original sentencing. While concluding that he should take into account appellant's honest admission of criminal wrongdoing and otherwise exemplary conduct during the three and one half years that had elapsed since the commission of the crime, the judge remained disturbed nonetheless by the prospect of a perjurer in the classroom. He resentenced appellant to a suspended three-year term of imprisonment and reduced the period of her probation to one year and her community service obligation to 200 hours. Although he removed the reference to religious education, he continued the special condition by prohibiting appellant from teaching young people during the period of her probation. He defined young people as anyone eighteen years of age or younger.[1] The district court stayed imposition of the restriction on appellant's teaching activities pending the outcome of the present appeal.

## DISCUSSION

Federal trial courts are accorded broad discretion to decide which defendants merit probation and under what conditions they will serve their probation. 18 U.S.C. § 3651 (1982). Since conditions of probation are subject to review only for abuse of discretion, *Fiore v. United States*, 696 F.2d 205, 207 (2d Cir.1982); *United States v. Alarik*, 439 F.2d 1349, 1351 (8th Cir.1971), a defendant who seeks to overturn a particular condition must establish that the court acted outside its discretionary authority in imposing it. The burden is a heavy one. In this Circuit, as in others, discretionary authority in probation matters is bounded by only two limitations. The first requires that the courts comply with the provisions of the Federal Probation Act, 18 U.S.C. § 3651 (1982). *Fiore*, 696 F.2d at 208; *see also United States v. Kohlberg*, 472 F.2d 1189, 1190 (9th Cir.1973) (per curiam). The second requires that conditions of proba-

---

1. Subsequent references to "young people" should be presumed to mean individuals eigh- teen years of age or younger.

tion be reasonably related to the simultaneous goals of rehabilitating the defendant and protecting the public. *Fiore*, 696 F.2d at 208; *United States v. Pastore*, 537 F.2d 675, 681 (2d Cir.1976); *see also United States v. Nu-Triumph, Inc.*, 500 F.2d 594, 596 (9th Cir.1974); *Porth v. Templar*, 453 F.2d 330, 333 (10th Cir.1971). In other words, conditions or probation must serve the objectives of probation, which are "to produce * * * law abiding citizen[s] and at the same time to protect the public against continued criminal or antisocial behavior." *Porth*, 453 F.2d at 333.

Appellant claims that the restriction on her teaching activities as a condition of her probation is irrational, punitive, and unrelated to the goals of probation, and that Judge Eginton exceeded his discretionary authority in imposing it. The Government responds that appellant was spared imprisonment solely for the sake of her children, that she could not have taught young people if she had been imprisoned, and that the condition imposed by the court is related to the goals of probation because it promotes appellant's continued rehabilitation and protects impressionable young people from the influence of a convicted perjurer. Given the circumstances of this case, we believe that the court's imposition of the challenged condition did not constitute an abuse of discretion.

 In reaching this conclusion, we give little weight to the Government's arguments that appellant would have been sent to prison but for her children, and that, once imprisoned, she could not have taught young people anyway. Neither argument merits extended discussion. No one challenges on this appeal the legitimacy of the court's initial decision to place appellant on probation rather than imprison her.[2] Once a court lawfully determines

that a defendant should be placed on probation, the focus of its concern must of necessity shift away from issues of guilt and punishment to those of rehabilitation and protection of the public. *See Berman v. United States*, 302 U.S. 211, 213, 58 S.Ct. 164, 166, 82 L.Ed. 204 (1937); *Higdon v. United States*, 627 F.2d 893, 897–98 (9th Cir.1980). Moreover, the hypothesized impact of a prison sentence on appellant's teaching activities is an irrelevant consideration in assessing the legitimacy of probation conditions. *See Pastore*, 537 F.2d at 681. The central inquiry remains whether the court acted within the bounds of its discretionary authority to set such conditions. *Id.*

The condition of probation challenged on this appeal restricts appellant's freedom to teach young people. Numerous courts have upheld conditions that similarly limit a probationer's freedom to engage in otherwise lawful activities. *See, e.g., United States v. Gracia*, 755 F.2d 984, 991 (2d Cir.1985) (probationer who refused to testify under grant of immunity before grand jury investigating terrorist groups lawfully prohibited from associating with known or suspected terrorists or their associates); *United States v. Lawson*, 670 F.2d 923, 930 (10th Cir.1982) (probationer convicted of failing to file income tax returns lawfully prohibited from membership in tax protest organization); *United States v. Villarin Gerena*, 553 F.2d 723, 726–27 (1st Cir.1977) (police officer convicted of civil rights violations in carrying out an arrest lawfully required to resign from police force during the period of his probation); *Malone v. United States*, 502 F.2d 554, 556–67 (9th Cir.1974) (IRA sympathizer convicted of gun running lawfully prohibited from associating with Irish cultural, political or social

---

**2.** Under the Federal Probation Act, a sentencing court may place a defendant on probation as long as it is "satisfied that the ends of justice and the best interest of the public as well as the defendant will be served thereby." 18 U.S.C. § 3651 (1982). Viewing the record as a whole, we are not persuaded that concern for appellant's children was the sole reason on which Judge Eginton based his ultimate sentencing

decision. The Government itself recommended that appellant be placed on probation. We find implicit in the court's decision to follow this recommendation its belief that appellant could be safely rehabilitated. In any event, even if concern for appellant's children were Judge Eginton's sole reason for placing appellant on probation, we do not view that reason as inconsistent with the statutory directive.

organizations), *cert. denied*, 419 U.S. 1124, 95 S.Ct. 809, 42 L.Ed.2d 824 (1975); *Berra v. United States*, 221 F.2d 590, 598 (8th Cir.1955), *aff'd*, 351 U.S. 131, 76 S.Ct. 685, 100 L.Ed. 1013 (1956) (union business manager convicted of tax evasion as a result of failure to report kickback income lawfully prohibited from holding union office or employment). These decisions recognize that the successful pursuit of probation objectives may require the court to structure a probationer's life in such a way that the temptation to repeat the original offense and the risk that the temptation poses to society are minimized.

■ No condition of probation, however, may be presumed valid. Each must be measured on a case by case basis against the reasonable relationship standard. *Pastore*, 537 F.2d at 681–82. Under this standard, a condition is *related* to the goals of probation if it is designed, in light of the crime committed, to promote the probationer's rehabilitation and to insure the protection of the public. *See id.* at 680–81 and cases cited therein. A condition is *reasonable* if it is not unnecessarily harsh or excessive in achieving these goals. *See Fiore*, 696 F.2d at 208; *Pastore*, 537 F.2d at 683; *Higdon*, 627 F.2d at 898. To withstand scrutiny under this second prong of the standard, conditions that restrict a probationer's freedom must be especially fine-tuned. *See, e.g., Porth*, 453 F.2d at 334 (tax protester lawfully prohibited from encouraging others to violate tax laws but not from expressing views as to constitutionality of tax laws); *see generally Higdon*, 627 F.2d at 898.

■ In considering the relationship between the restriction and appellant's rehabilitation, we note at the start that Judge Eginton himself was "really not worried about [appellant's] future conduct," and believed that she had "seen the light very thoroughly." The Government nonetheless argues that the court's restriction should be upheld because it will have a salutary effect on appellant's continued rehabilitation by stressing the importance of truth and honesty. We agree. Insofar as appel-

lant perjured herself in order to conceal the falsification of tax returns and evade the payment of income taxes, the cultivation of truth and honesty in all spheres of her life is an important rehabilitative goal. In petitioning the court to lift its restriction, appellant emphasized the satisfaction that she derived from teaching religious education to young people at St. Gabriel's. Denying her that satisfaction during a period of one year should serve as a potent but not unreasonable deterrent against the temptation to perjure herself in the future, thereby reinforcing her continued rehabilitation.

■ Moreover, in fashioning conditions of probation, we note that a sentencing court must strike a balance between two equally important interests. It must give no less attention to protecting the public than to rehabilitating the defendant. In the present case, the Government also argues that the restriction on appellant's teaching activities will serve to shield impressionable young people from the influence of a convicted perjurer. This concern for the protection of impressionable young people was apparently the principal motivating factor behind Judge Eginton's decision to impose the challenged condition. In explaining his decision, the Judge stated:

> My problem is that I still have to consider the public message that any Court sends whenever a Court sentences * * * I'm worried about the perjury element * * * I think beyond 18 years of age people are capable of not being too impressionable, and I'm concerned about people being impressionable under that age, and that's why I'm putting that restriction in.

His decision to impose the restriction appears to have been motivated by three concerns: first, the "public message" that would be conveyed if he permitted a convicted perjurer to continue teaching young people at least during her probation; second, the serious nature of the crime of perjury, which calls into question the perjurer's basic moral values and, therefore, her suitability to teach; and third, his belief that young people are "impressionable"

and, presumably, susceptible as a result to the moral and intellectual influences of an authority figure such as a teacher.

We believe that the district court's concern for the "public message" should not be an overriding objective in imposing conditions of probation. As we have previously stated, the standard is whether the condition is reasonably related to the objectives of probation. With respect to the court's second and third concerns, however, we share its disdain for the crime of perjury, and we think the condition of probation that it imposed is not inconsistent with the legitimate objective of protecting the public. By segregating appellant from her young students, the restriction will shield these students in the classroom at least, against any lingering propensity on her part to be dishonest—or arguably to espouse dishonesty—and against their own propensity to react impressionably in response.

In concluding that the condition imposed by the district court satisfies the requisite reasonable relationship standard, we recognize that both the Archdiocese of Bridgeport and St. Gabriel's Parish have determined that, despite her conviction for perjury, appellant is morally and intellectually competent not only to continue teaching religious education to young people enrolled in St. Gabriel's Religious Education Program, but to assume the paid position of Program Director. We also recognize that in *Pastore, supra,* this court struck down a probation condition that required a lawyer convicted of income tax evasion to resign from the bar. That decision, however, was founded in large measure on "the availability of alternative and *well-defined* procedures for expulsion from the bar." 537 F.2d at 683 (emphasis added). The condition, moreover, required the defendant to give up his profession conceivably for life. *Id.*

In contrast, the determination of the Archdiocese and of St. Gabriel's Parish with respect to appellant's suitability to teach young people was not reached as a result of similarly "well-defined proce-

dures" and, in our view, cannot be properly substituted for the judgment of the sentencing court that retains unique responsibility for appellant during the period of her probation. Moreover, we note that, unlike the condition in *Pastore, supra,* the condition in the present case applies for one year rather than for life and is sufficiently narrow to allow appellant to continue teaching as long as her students are over eighteen years of age.

Finally, in measuring the condition challenged on this appeal against the standard adopted in *Pastore,* we cannot ignore the not incidental deterrent and retributive impact of commonly accepted conditions of probation. Such conditions include requirements of substantial hours of community service (at work that is often drudgery), payment of money to a victim for restitution, frequent reports to probation officers, restrictions on travel and the like. Moreover, probation itself contains elements of punishment in the restraints imposed upon the freedom of the individual, such as the requirements that a probationer may not travel outside the area served by the District Court without permission, must work regularly at a lawful occupation, must keep "reasonable hours", must not associate with "undesirable persons," and must follow the Probation Officer's instructions "regarding his recreational and social activities". *See In re General Conditions of Probation,* No. M–11–183, order (S.D.N.Y. June 8, 1932); Conditions of Probation for S.D.N.Y., Probation Form No. 7.

In other words, probation and well-accepted conditions thereto may well have inherently punitive, deterrent and retributive aspects, even though they are generally regarded as having rehabilitation as their primary purpose. In addition to protection of the public, and of course punishment, even prison sentences involve rehabilitation. Indeed, it is a rare sentence, whether or not jail is a part of it, that does not in fact involve all of these objectives—punishment, deterrence, protection of the public, rehabilitation and restitution.

36

We conclude that the condition of probation here is reasonably related to the probation objectives of rehabilitation and protection of the public. The judgment is affirmed.[3]

3. We are not persuaded by the brief of *amicus curiae* Connecticut Civil Liberties Union that the condition violates the First and Fourteenth Amendment rights of Free Exercise and the Establishment Clause.