# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-1689

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the District |
| | * | of Minnesota. |
| Ashland, Inc. | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: October 22, 2003

Filed: January 28, 2004

_____

Before LOKEN, Chief Judge, and HEANEY and MORRIS SHEPPARD ARNOLD, Circuit Judges.

_____

MORRIS SHEPPARD ARNOLD, Circuit Judge.

## I.

A series of explosions and fires caused by the improper use of a sewer line, resulting in the injury of several workers, occurred at the St. Paul Park Refinery, an oil refinery in St. Paul Park, Minnesota, which at the time was owned by Ashland, Inc. (Ashland). An information stemming from the fire was brought against Ashland, and it entered a plea agreement with the United States, pursuant to which it pleaded guilty to two misdemeanor counts (negligent endangerment in connection with the release of a hazardous air pollutant and knowingly making a false certification to the

Minnesota Pollution Control Agency).  The district court accepted Ashland's plea and the plea agreement and, as relevant here, sentenced Ashland to serve a five-year term of probation subject to various conditions.  Responding, in part, to objections by Ashland to some of the probation conditions, the district court issued an amended judgment.  At issue here are certain probation requirements imposed on Ashland in that judgment.

"Sentencing judges are given wide discretion in setting terms of probation," *United States v. Schoenrock*, 868 F.2d 289, 291 (8th Cir. 1989), and the conditions of probation "are reviewable only upon a showing of abuse of discretion," *United States v. Rifen*, 634 F.2d 1142, 1144 (8th Cir. 1980) (per curiam).  For the reasons explained below, we hold that the district court abused its discretion in imposing certain terms of probation relating to the St. Paul Park Refinery and the entity that now owns the refinery.

## II.

At the time of the sewer fire, Ashland was the sole owner of the St. Paul Park Refinery.  The day before the fire, Ashland and Marathon Oil Company entered into, and publicly announced, the signing of a letter of intent to combine their respective refining and marketing assets into a new entity, Marathon Ashland Petroleum LLC (MAP).  The transaction was completed about six months later, at which time ownership of the St. Paul Park Refinery was transferred from Ashland to MAP.  MAP is a Delaware limited liability company with two stakeholders: Marathon Oil Company, which owns a 62% interest; and Ashland, which owns a 38% interest.  Marathon Oil Company and Ashland each contributed certain refining and marketing assets to MAP at its formation (including, on Ashland's part, the St. Paul Park Refinery).  MAP is managed by a board, which has eight voting members (five appointed by Marathon Oil Company and three designated by Ashland) and one non-voting member (MAP's president, who is a Marathon Oil Company employee).  The

-2-

board acts through majority vote, except for certain limited actions that require unanimous decisions.

The conditions of probation that the district court imposed required Ashland to refrain from committing another federal, state, or local crime, to make certain fine and restitution payments, to place notices in major area newspapers, to conduct a workshop at a national petroleum conference, and to upgrade all process sewers, junction boxes, and drains at the St. Paul Park Refinery to comply with Subpart QQQ of the Clean Air Act new source performance standards, 40 C.F.R. § 60.692. The district court also imposed certain requirements that, according to Ashland, render it accountable for the conduct of MAP (an uncharged third party) at the St. Paul Park Refinery (which is presently one of MAP's facilities). Ashland contends that these conditions of probation are fundamentally unfair and violate its constitutional due process rights. In particular, Ashland objects to paragraphs (e) and (f) of the special conditions of probation, which it argues, when read together with the district court's statement of reasons, impermissibly condition its probation on MAP's future acts or omissions arising from MAP's operation of its St. Paul Park Refinery.

> Special Condition of Probation (e) states:
>
> The defendant shall designate a corporate officer, including a corporate office [*sic*] at Ashland headquarters who shall bear personal responsible [*sic*] for implementing and overseeing the fulfillment of the conditions of probation during each year of the probation provided in this Judgment and Decree.
>
> Special Condition of Probation (f) goes on to provide:
>
> The officer designated in Paragraph e, above, and the St. Paul Park Refinery manager shall provide allow [*sic*] appropriate access to the St. Paul Park refinery to allow the United States Probation Office, and its environmental consultant to monitor and ascertain the defendant's

completion of the sewer upgrade project *and to assure Ashland's compliance with the terms of probation*.

(Emphasis added.)

The district court explained in its statement of reasons that "any terms of probation, as well as the scope of duties of the Probation Consultant, are explicitly extended to entities currently owned and operated solely by defendant Ashland, Inc., *and to the St. Paul Park Refinery*" (emphasis added). The district court further asserted in its statement of reasons that "[t]he creation of [MAP] does not ... absolve defendant Ashland from its criminality or its duty to insure environmental and safety compliance at the *very location and facility* which engendered the grievous injury ... and was the cause and locus of the environmental offense" (emphasis added).

The district court did not find, nor does either party now contend, that MAP was a corporate successor of Ashland or was otherwise accountable for Ashland's liabilities, and the district court expressly acknowledged in its statement of reasons that "[t]here is no present basis upon which the Court can find that Marathon Ashland Petroleum, Inc. [*sic*] was created in an attempt to evade responsibility for prior criminal acts or for any illegal or wrongful purpose."

III.

Ashland is entitled to due process before being punished for any alleged violations of the terms and conditions of its probation, *see United States v. Reed*, 573 F.2d 1020, 1023 (8th Cir. 1978), which includes a right to have terms and conditions of probation that are sufficiently clear to inform it of what conduct will result in an infraction of probation, *see United States v. Guagliardo*, 278 F.3d 868, 872 (9th Cir. 2002), *cert. denied*, 537 U.S. 1004 (2002). Furthermore, it would be fundamentally unfair to hold Ashland accountable on probation for actions beyond its control. *See, e.g., Bearden v. Georgia*, 461 U.S. 660, 672-73 (1983). Ashland maintains that it would violate its due process rights to punish it for probation

violations based solely on the future acts or omissions of MAP, which is a separate company not under Ashland's control. We agree.

Other courts have noted the impropriety of punishing a defendant based solely on the conduct of another party. In *Fiore v. United States*, 696 F.2d 205 (2d Cir. 1982), the Second Circuit, referring to the "controlling axiom[] of criminal jurisprudence" that "a defendant may not be sentenced for the crimes of another," *id.* at 210, reversed a term of probation imposed on a defendant that was improperly conditioned on the payment of a fine that was imposed on a corporate co-defendant, *id.* at 208-10. And the D.C. Circuit, in *United States v. Sun-Diamond Growers of Cal.*, 138 F.3d 961, 977 (D.C. Cir. 1998), reversed the district court's imposition of probation conditions that included affiliated entities that were not under the defendant's control. We believe that the probation conditions challenged here similarly improperly conditioned Ashland's probation on the conduct of MAP, a third party not subject to Ashland's control.

In its second standard condition of probation, which is not contested here, the district court imposed on Ashland a requirement that it "permit a probation officer to visit the organization at any of its operating business sites." Special condition of probation (f), however, goes further, requiring Ashland to provide ongoing access to the St. Paul Park Refinery to the probation office and its environmental consultant, even though the refinery is no longer a "business site" of Ashland, but is owned, operated, and controlled by MAP, a third party that was not charged or sentenced in this case. As a minority stakeholder of MAP, Ashland has no control over or ability to direct MAP's day-to-day operation of the refinery, and is not in a position to ensure that continual access is granted to the probation office and its consultant. While Ashland has agreed to undertake and complete the QQQ sewer upgrade project at the St. Paul Park Refinery, it had to obtain MAP's consent in order to implement this project at MAP's facility (which MAP understandably gave, since the sewer upgrade was a considerable benefit that it did not have to pay for).

-5-

Because MAP is not a party to this action, the district court did not have any jurisdiction to impose probation terms and conditions on it. *Cf. Horton Dairy, Inc. v. United States*, 986 F.2d 286, 291-92 (8th Cir. 1993) (holding that the district court lacked jurisdiction over a non-party to determine the rights of that non-party in a tax levy suit). As the government concedes in its brief, "the district court cannot compel MAP to take particular measures at the St. Paul Park Refinery," and "the district court did not impose any obligations on any entity other than Ashland." The district court, however, said in its statement of reasons that "[w]hile [MAP] should not, and will not ... shoulder the full burden of Ashland's wrongdoing, [MAP] cannot operate without coming into compliance with the law and curing the defects which led to the criminal injury." Because the district court was not placing MAP on probation, this statement must necessarily relate solely to Ashland.

Ashland maintains that the district court's requirement that it provide access to the refinery to allow the probation office "to assure Ashland's compliance with the terms of probation," and its statement that MAP must "com[e] into compliance with the law and cur[e] the defects which led to the criminal injury," have one of two potential rationales, both of which are impermissible: the court is either placing upon Ashland a duty to oversee a facility that Ashland does not own, operate, or control, or the court is holding Ashland accountable for MAP's actions in operating what is now MAP's refinery. Here, the district court expressly stated in its statement of reasons that Ashland has a continuing "duty to insure environmental and safety compliance" at the refinery. The terms and conditions of probation should be interpreted with due regard for the district court's statement of reasons, which appears to impose a "duty to insure" the occurrence of particular behavior that is beyond the bounds of Ashland's control.

The amended judgment, read in its entirety, seems to require that Ashland grant the probation office ongoing access to the refinery so that it can monitor environmental and safety compliance there. Ashland is understandably concerned,

based on the language in the amended judgment, that its probation will be revoked if the probation office discovers anything at the refinery that is out of compliance with environmental legal standards, regardless of whether Ashland was responsible for, or had the ability to prevent, such violations.

We hold that the terms and conditions of probation set by the district court cannot stand as written because they violate Ashland's due process rights by making its probation contingent upon the future acts or omissions of MAP at the St. Paul Park Refinery. Where impermissible conditions have been imposed on probation, a reviewing court faces a choice "between eliminating the objectionable condition and letting the sentence stand as modified, and remanding for resentencing in accordance with [its] opinion." *United States v. Jimenez*, 600 F.2d 1172, 1175 (5th Cir. 1979), *cert. denied*, 444 U.S. 903 (1979); *see Fiore*, 696 F.2d at 211. We conclude that the objectionable conditions here constitute a relatively minor portion of the conditions of probation and that they were not an integral part of the district court's judgment because they relate solely to the conduct of an unindicted third party and a facility that is not owned, operated, or controlled by Ashland. Consequently, we choose to excise the objectionable conditions.

We note that Ashland has complied in a timely manner with the conditions of probation that are within its control by paying over $8 million in fines and restitution, placing notices in local newspapers, holding a seminar, and, after getting the appropriate permission from MAP, undertaking a major construction project at the St. Paul Park Refinery so that it complies with Subpart QQQ standards. It is reasonable that, to the extent that it can, Ashland should allow the probation office to monitor its compliance with its QQQ sewer upgrade project at the refinery, since Ashland agreed to complete this project as part of its plea agreement. The remainder of the probation conditions relating to the St. Paul Park Refinery, however, render the terms of probation facially overbroad, and improperly make Ashland liable for conduct at the refinery that it cannot control. Though the objectionable probation

conditions have yet to be enforced, the Constitution entitles Ashland to terms of probation that comport with due process.

IV.

For the reasons stated, we modify the amended judgment of the district court. Special condition of probation (f) should deal only with the sewer upgrade project, and is changed to read: "The officer designated in Paragraph e shall provide appropriate access to the St. Paul Park Refinery, to the extent that he can, to allow the United States Probation Office and its environmental consultant to monitor and ascertain the defendant's completion of the sewer upgrade project." In addition, we strike the second page of the statement of reasons.

_____