**UNITED STATES of America, Appellee,**

v.

**Charles PRUITT, Appellant.**

**No. 82–2143.**

United States Court of Appeals, Eighth Circuit.

March 17, 1983.

---

Robert G. Ulrich, U.S. Atty., Mark J. Zimmermann, Asst. U.S. Atty., Kansas City, Mo., for appellee.

Thomas E. Hankins, Gunn, Hall & Stahl, Gladstone, Mo., for appellant.

Before BRIGHT, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and McMILLIAN, Circuit Judge.

PER CURIAM.

Appellant Charles Pruitt was convicted by a jury in the United States District Court for the Western District of Missouri [1] on August 11, 1982, of knowingly making a false, fictitious, and fraudulent claim to the

---

1. The Honorable Elmo B. Hunter, Senior United States District Judge for the Western District of Missouri.

General Services Administration (GSA) in violation of 18 U.S.C. § 287 (1976).[2] He was sentenced to three years' imprisonment and fined $10,000. Appellant seeks reversal of his conviction or, in the alternative, a new trial, arguing that (1) the evidence presented at trial was insufficient to support his conviction, and (2) the trial court erroneously admitted the testimony of several witnesses regarding their telephone conversations with appellant before a proper foundation had been laid. We affirm.

Appellant was the secretary of the Four Star Electric Company (Four Star) of Elkhart, Indiana. On November 16, 1978, appellant placed a bid on behalf of Four Star with the GSA office in Atlanta, Georgia, to supply four transformers to the government. At the same time, appellant attempted to contract with the Westinghouse Electric Supply Company (WESCO) of South Bend, Indiana, to manufacture the transformers. Because of Four Star's poor credit, WESCO refused to deal with Four Star. To remedy this problem, appellant purportedly sent a letter to GSA in Atlanta on January 8, 1979, asking that any future payments be sent directly to WESCO. This arrangement apparently satisfied WESCO.

On January 16, 1979, Four Star entered into a contract with GSA to supply four transformers. Both the contract and a purchase order sent to appellant on January 17, 1979, indicated that all payments would be remitted to Four Star in Elkhart, Indiana. Appellant then contracted with WESCO to manufacture the transformers. The original delivery date was May 2, 1979.

When Four Star failed to deliver the transformers on time, GSA sent appellant a preliminary notice of default on May 15, 1979. Appellant did not respond, and GSA employee Lillie Jackson finally telephoned him on June 14, 1979. Jackson testified at trial that appellant was designated on the GSA-Four Star contract as Four Star's contact person. The contract listed appellant's name, address, telephone number, and signature. Jackson called the number shown on the contract and the person who answered identified himself as appellant. Appellant objected to any testimony by Jackson regarding the substance of her conversation with appellant for lack of foundation. The court overruled the objection.

In her conversation with appellant, Jackson offered to extend the delivery deadline to July 8, 1979, if he would make a price concession, and advised him of the government's right to declare the contract in default. Appellant refused to negotiate. On June 20, 1979, appellant received a mailgram notifying him of default. That same day, appellant instructed his secretary to prepare and mail an invoice for the four transformers to the GSA accounts payable office in Kansas City, Missouri. The invoice indicated that the four transformers had been shipped, although appellant knew from his weekly contacts with WESCO that the transformers were not completed.

In the meantime, beginning in late May, appellant contacted WESCO at least once a week to find out whether WESCO had made arrangements for a GSA representative to inspect the transformers. On July 11, 1979, a GSA inspector finally arrived at the WESCO plant in South Bend, Indiana, to inspect the transformers. The GSA inspector rejected the transformers because they did not conform to GSA specifications. GSA later conceded that this determination was erroneous and eventually purchased these same transformers from WESCO.

On July 9, 1979, just two days before the GSA inspection of the transformers, the Atlanta GSA office mailed a notice of contract termination to Four Star with a carbon copy to the GSA accounts payable office in Kansas City, Missouri. Nevertheless, the Kansas City GSA office sent appellant a check for $23,935.91 in response to his

---

2. 18 U.S.C. § 287 provides:

Whoever makes or presents to any person or officer in the civil, military, or naval service of the United States, or to any department or agency thereof, any claim upon or against the United States, or any department or agency thereof, knowing such claim to be false, fictitious, or fraudulent, shall be fined not more than $10,000 or imprisoned not more than five years, or both.

June 20, 1979 invoice, which he received on July 24, 1979. GSA did not detect its error in payment until mid-1980.

Thomas Moran, an operating accountant in the Kansas City GSA accounts payable office, attempted to contact appellant for several months about the payment. At trial he testified that on September 8, 1980, he reached appellant by phone after dialing the number shown on the invoice for the transformers. Moran said that the man who answered the phone identified himself as appellant. Again appellant objected to any testimony of what was said in this telephone conversation on the grounds that the government had not laid a sufficient foundation. This objection was overruled.

Moran asked appellant about the check mistakenly sent to Four Star, but appellant replied that he had no record of any GSA payment. After Moran sent appellant a photocopy of the canceled check, appellant acknowledged receipt of the money but wanted to put off Moran until April 1981. Moran was unable to contact appellant again.

Appellant maintains that the evidence was insufficient to support his conviction. In appellant's view, the evidence clearly demonstrated that he did not know at the time he submitted the invoice that it was false, fictitious, or fraudulent. Furthermore, appellant argues that any suggestion in the June 20, 1979 invoice that the transformers had already been shipped was an inconsequential misstatement of fact because GSA was aware that the transformers had not been shipped. Appellant points out that if he had intended to deceive GSA, he would not have attempted in late June and early July to get a GSA representative to inspect the transformers.

■ In determining whether substantial evidence exists from which a jury might properly find an accused guilty beyond a reasonable doubt, a reviewing court must consider the evidence in the light most favorable to the government and accept all reasonable inferences as established. *United States v. Swarek*, 656 F.2d 331, 333 (8th Cir.), *cert. denied*, 454 U.S. 1034, 102 S.Ct.

573, 70 L.Ed.2d 478 (1981). We have thoroughly examined appellant's contentions of insufficient evidence in light of the testimony presented at trial and find them without merit. Appellant's claim that he did not know of the falsity of the invoice at the time he submitted it was contradicted by testimony of WESCO employees who stated that they had kept appellant fully informed about their progress in building the transformers. The jury could reasonably infer from this testimony that appellant knew on June 20, 1979, that WESCO had not shipped any transformers.

■ The question of the materiality of the allegedly false statement contained in the invoice, while an essential element of 18 U.S.C. § 287, is nevertheless a matter of law. *See United States v. Adler*, 623 F.2d 1287, 1291 n. 5, 1292 (8th Cir.1980). A statement is material if it has a tendency to induce the government to act by placing the claimant in a position to receive government benefits. Because there was no factual dispute in the instant case concerning the tendency of the false statement to cause the GSA to pay, we find no error.

■ Appellant claims that the trial court erroneously admitted testimony about several telephone conversations before a proper foundation had been laid. Appellant argues that since neither of the witnesses who testified about their conversations with appellant were familiar with appellant's voice, the foundation for authenticating a telephone conversation was not properly laid. This claim also lacks merit. Identification of a party to a telephone communication may be established by circumstantial evidence, including self-identification, tending to relate a phone number to a particular person. *Cwach v. United States*, 212 F.2d 520, 525 (8th Cir.1954). *See* Fed.R.Evid. 901(b)(6) and advisory committee notes. Therefore, the trial court did not err in permitting this testimony when both witnesses recalled dialing a number on documents provided and signed by appellant and being greeted by a man who identified himself as appellant.

For the reasons discussed above, we affirm.