**UNITED STATES of America, Appellee,**

v.

**Bernard P. ELKIN, a/k/a "Bob Elkin," and Boston Pneumatics, Inc., Defendants-Appellants.**

Nos. 525, 526, Dockets 83–1243, 83–1244.

United States Court of Appeals, Second Circuit.

Argued Dec. 12, 1983.

Decided March 15, 1984.

Peter Chavkin, Asst. U.S. Atty., Brooklyn, N.Y. (Raymond J. Dearie, U.S. Atty., E.D.N.Y., L. Kevin Sheridan, Asst. U.S. Atty., Brooklyn, N.Y., on brief), for appellee.

Richard A. Kerner, New York City, for defendant-appellant Elkin.

Walter J. Kenney, New York City, for defendant-appellant Boston Pneumatics, Inc.

Before MESKILL, KEARSE and CARDAMONE, Circuit Judges.

KEARSE, Circuit Judge:

Defendants Bernard P. Elkin and Boston Pneumatics, Inc. ("BPI"), appeal from judgments entered after a jury trial in the United States District Court for the Eastern District of New York, Henry Bramwell, *Judge*, convicting them of submitting a false claim for reimbursement to the United States Department of Defense on a government contract ("Contract"), in violation of 18 U.S.C. § 287 (1982); submitting false statements in connection with that claim, in violation of *id.* § 1001; and mail fraud, in violation of *id.* § 1341. Elkin also appeals from his conviction of obstruction of justice, in violation of *id.* § 1503, for having impeded the grand jury's investigation of the false claim. The court sentenced Elkin to probation for five years and ordered as a special condition of probation that he make restitution to the government in the amount of $119,534, and restitution to two subcontractors in the amounts of $69,785 and $29,840, respectively. The court also ordered BPI to make such restitution. On appeal, defendants challenge the validity of their convictions principally on the grounds that there was no evidence of a mailing sufficient to sustain the mail fraud count and that the court improperly failed to submit to the jury the question whether the falsities in defendants' false claim and false statements were material. Defendants also contend that the court had no authority to order them to make restitution to the subcontractors, or to make restitution to the government in an amount in excess of $65,142, the amount of the fraudulently procured payment charged in the indictment. For the reasons below, we affirm the convictions, but vacate the judgments and remand for resentencing.

## I. BACKGROUND

### A. *The Events*

The evidence presented at trial, viewed in the light most favorable to the government, revealed the following events. In August 1978, the United States Department of Defense awarded BPI a fixed-price contract for the production of globe stop valves. Elkin, BPI's president and principal shareholder, signed the Contract on behalf of BPI. The Contract provided that BPI could request progress payments from the government as reimbursement for its costs before the Contract was completed, provided that defendants could certify that BPI had purchased parts to perform the

Contract, had obtained title to the parts, and had fully paid for the parts or would pay for them as payments came due in the ordinary course of business.

On June 27, 1979, BPI submitted its first progress payment request ("June 1979 Request"), signed by Elkin, requesting reimbursement in the amount of $112,179.60 for four of the parts needed for the assembly of the globe stop valves. Elkin certified that BPI had paid, or intended in the ordinary course of business to pay, Etoile Machine and Tool Co., Inc. ("Etoile"), approximately $131,000 for these parts. The request was accompanied by a copy of an invoice purporting to show that Etoile had charged BPI $131,000 for the parts. The evidence showed that this claim was false in several respects.

To begin with, Etoile was a sham company, incorporated by Elkin's attorney at Elkin's request. Etoile did not produce the parts in question; its business existence consisted solely of a telephone located in the home of Robert Dohn, a former BPI employee. The testimony revealed that Elkin had instructed Dohn to answer the telephone in the name "Etoile," to inform government inspectors who called that the globe stop valve parts had been shipped to R & H Manufacturing Company ("R & H") for finishing, and to refer all inquiries to Elkin. In fact, BPI had engaged Excelsior Brass Company ("Excelsior") to produce these and other parts and R & H to finish them. The testimony revealed that BPI was eventually charged approximately $45,000 for these unfinished parts, rather than the $131,000 claimed in the progress payment request.[1] Further, BPI did not have title to the parts at the time it requested the progress payments, since production of the parts was not actually completed by Excelsior until several months after BPI submitted its request. Finally, the evidence showed that BPI has yet to make any payments to Excelsior and R & H for their work.

As a result of the June 1979 Request, defendants received a check from the De-partment of Defense in August 1979 in the amount of $65,142. Several months later, defendants defaulted on the Contract, and the Department of Defense has never received any of the globe stop valves, nor any of the parts for which it issued the progress payment.

In the course of investigating BPI's performance to determine whether BPI was entitled to keep the progress payment, the Department of Defense asked Elkin's attorney to supply proof that Etoile had made the parts and had been paid for them. In response, Elkin provided his attorney with a letter of verification (the "Verification Letter") purportedly signed by Elkin's accountant, which the attorney mailed to the Department of Defense in December 1981. In fact, however, the letter was false and had not been written, signed, or authorized by the accountant. The attorney's mailing of the Verification Letter was the mailing charged in the mail fraud count of the indictment.

Despite defendants' efforts to conceal their fraud, they became the subject of a grand jury investigation. Dohn, the former BPI employee who had maintained and answered the Etoile telephone, testified before the grand jury that Elkin had instructed him to lie to the grand jury by stating that Elkin had nothing to do with Etoile or the telephone in Dohn's home and that Etoile was the tool of Elkin's former attorney, who had incorporated the company at Elkin's request. Elkin also instructed his accountant to testify falsely to the grand jury that all records relating to the Contract had been destroyed during a burglary.

Eventually, both defendants were indicted for mail fraud in connection with the mailing of the Verification Letter to cover up the fraudulent June 1979 Request, in violation of § 1341; for making false statements in connection with the June 1979 Request, in violation of § 1001; and for submitting the false June 1979 claim for payment from the government, in violation

---

**1.** There was no evidence as to how much R & H charged BPI for finishing the parts.

of § 287. In addition, Elkin was indicted for obstruction of justice, in violation of § 1503.

### B. The Sentencing

Defendants were convicted on all counts. Invoking 18 U.S.C. § 3651, the court suspended the imposition of sentence on both defendants and placed Elkin on probation for a period of five years. As a condition of that probation, the court ordered that Elkin make restitution (1) to the government in the amount of $119,534, (2) to Excelsior in the amount of $69,785, and (3) to R & H in the amount of $29,840. The court did not place BPI on probation but ordered it to make the same restitution. In setting the amount of restitution to be made to the government at $119,534, the court noted that the presentence report on the defendants disclosed that in addition to the $65,142 defendants had received in August 1979, which formed the basis for the present indictment and trial, defendants had received two additional progress payments from the government totaling $54,-392.

### C. The Issues on Appeal

On appeal, defendants raise a number of challenges to the validity of their convictions and their sentences. Primarily, they contend (1) that the mailing of the Verification Letter was insufficient to satisfy the mailing requirement of § 1341, (2) that the trial court erred in not submitting to the jury the question whether the falsities in defendants' false claim and false statements were material, and (3) that the sentences impermissibly require them to make restitution of amounts not charged in the indictment. We have considered all of defendants' contentions and find those challenging the convictions to be without merit.

**2.** Defendants contend also that the testimony of their attorney that she mailed the Verification Letter on the instructions of Elkin should have been excluded from evidence on the grounds of attorney-client privilege. This argument borders on the frivolous. The attorney-client privilege attaches only to a client's confidential communications to his attorney for the purpose of

We conclude, however, that the trial judge erred in suspending sentence on BPI without placing it on probation, and we agree that he exceeded his authority in ordering restitution as to amounts of money that were allegedly owed by defendants but were not charged in the indictment and proven at trial. Accordingly, we vacate the judgments and remand for resentencing.

## II. VALIDITY OF THE CONVICTIONS

### A. Mailing

■ Defendants contend that the mail fraud count of the indictment must be dismissed because the government, by relying only on the mailing by Elkin's attorney of the Verification Letter more than two years after defendants received the first progress payment, failed to produce evidence of a mailing "for the purpose of executing [any] scheme or artifice [to defraud]" within the meaning of § 1341.[2] Defendants contend that the fraud came to fruition with the receipt of the progress payment in August 1979 and that, therefore, the mailing of the Verification Letter in December 1981 was not sufficiently related to the scheme to bring defendants within the reach of the mail fraud statute.

We disagree. The government established at trial both that the Verification Letter was false and that it was "a necessary step in executing the scheme[ ] because it was designed to lull" the Department of Defense into believing that the progress payment had been properly made. *United States v. Angelilli,* 660 F.2d 23, 36 (2d Cir.1981), *cert. denied,* 455 U.S. 910, 102 S.Ct. 1258, 71 L.Ed.2d 449 (1982). Thus, the fact that the Verification Letter was mailed after the defendants received the progress payment in no way suggests that it was not sent in furtherance of the scheme to defraud.

seeking legal advice. *See United States v. Kovel,* 296 F.2d 918, 921 (2d Cir.1961); *accord In re Horowitz,* 482 F.2d 72, 80–81 n. 7 (2d Cir.), *cert. denied,* 414 U.S. 867, 94 S.Ct. 64, 38 L.Ed.2d 86 (1973). The privilege does not protect a client from the disclosure that he instructed the attorney to place a document in the mail.

Defendants' reliance on *United States v. Maze*, 414 U.S. 395, 94 S.Ct. 645, 38 L.Ed.2d 603 (1974), is misplaced. In *Maze*, the defendant had purchased food and lodging with a stolen bank credit card; the mailings charged in the indictment were the mailings by the merchants of the bills to the bank and the mailing by the bank of a bill to the owner of the stolen card. The Court concluded that these mailings were not within the contemplation of § 1341 because they could not have served to conceal the fraud but only to disclose it. In the present case, in contrast, the Verification Letter was mailed by the defendants to the defrauded party in order to conceal the falsity of the June 1979 Request and to increase the chances that defendants would retain the fruits of their fraud. Plainly the mailing here played an integral role in the scheme, and there is no basis for disturbing the mail fraud convictions.

## B. *Materiality*

In instructing the jury with respect to the counts charging defendants with violations of 18 U.S.C. §§ 287 and 1001, the trial court informed the jury that the materiality of the facts falsified was a matter to be determined by the court and that the court had determined that the facts that the indictment alleged had been falsified were material facts. Defendants contend that questions of materiality under §§ 287 and 1001 are to be decided by the jury as a matter of fact and that the trial court erred in not submitting the questions of materiality to the jury. We disagree.

### 1. *Section 1001*

■ Section 1001 of 18 U.S.C. makes it unlawful for a person, in any matter within the jurisdiction of any department or agency of the United States, to falsify or conceal a material fact or to "make[ ] any false, fictitious or fraudulent statements or representations, or make[ ] or use[ ] any false writing or document knowing the same to contain any false, fictitious or fraudulent statement." It is settled in this Circuit that materiality is not an element of the offense of making a false statement in violation of § 1001. *United States v. Rinaldi*, 393 F.2d 97, 99–100 (2d Cir.), *cert. denied*, 393 U.S. 913, 89 S.Ct. 233, 21 L.Ed.2d 198 (1968); *United States v. Aadal*, 368 F.2d 962, 964 (2d Cir.1966), *cert. denied*, 386 U.S. 970, 87 S.Ct. 1161, 18 L.Ed.2d 130 (1967); *see United States v. Silva*, 715 F.2d 43, 49–50 (2d Cir.1983). Moreover, courts that have considered materiality to be an element of an offense charged under § 1001 have ruled that the question is one of law to be decided by the court, not one of fact for the jury. *E.g., United States v. Beer*, 518 F.2d 168, 170–71 (5th Cir.1975). Accordingly, we see no error in the trial court's refusal to submit to the jury the question of whether defendants' misrepresentations were material.

### 2. *Section 287*

■ Section 287 of 18 U.S.C. makes it unlawful to present to any department or agency of the military service of the United States "any claim upon or against the United States, or any department or agency thereof, knowing such claim to be false, fictitious or fraudulent." Although this Court has not previously decided whether materiality is an element of a violation of § 287, we have held that the similar language of 18 U.S.C. § 80 (1934), a precursor to § 287, did not require a finding that the falsity in the claim was material. *See United States v. Presser*, 99 F.2d 819, 822 (2d Cir.1938).[3] Since the language of § 287 in no way suggests that materiality is an element of the offense, we conclude that proof of materiality was not required. *Accord United States v. Irwin*, 654 F.2d 671, 682 (10th Cir.1981) (legislative history of § 287 does not indicate that Congress intended that materiality be an element), *cert. denied*, 455 U.S. 1016, 102 S.Ct. 1709, 72 L.Ed.2d 133 (1982); *but see United States v. Adler*, 623 F.2d 1287, 1291 n. 5 (8th Cir.1980) (requiring proof of materiali-

**3.** Section 287 was based on the 1940 edition of 18 U.S.C. § 80, whose language was identical to that of the 1934 edition of § 80 at issue in *Presser*.

ty); *United States v. Snider*, 502 F.2d 645, 652 n. 12 (4th Cir.1974) (same).

Even were we to conclude, however, that materiality is an element of a § 287 offense, we would be inclined to agree with the Fifth Circuit that, as in the § 1001 context, the issue of materiality would be one reserved to the trial court for decision as a matter of law. *See United States v. Haynie*, 568 F.2d 1091, 1092 (5th Cir.1978). Consequently, we find no error in the trial court's refusal to submit to the jury any issue of materiality with respect to the § 287 count.

### III. THE SENTENCING

Defendants contend that the sentencing court's orders of restitution were impermissible in two respects. First, they contend that since the indictment charged, and the trial evidence proved, only that they unlawfully obtained one progress payment of $65,142, the court had no authority to require that they make restitution to the government of any amounts in excess of that figure. Second, they contend that the court lacked the authority to order them to make restitution to the subcontractors of any amounts allegedly owing to them. We agree with both contentions, and find, in addition, a fundamental flaw in the sentencing court's treatment of BPI.

### A. *The Treatment of BPI*

We confront first the sentencing court's treatment of BPI. The court suspended the imposition of sentence on BPI and ordered it to make restitution to the government and the subcontractors. The court did not, however, place BPI on probation, and this failure makes the treatment of BPI void.

 Assuming there have been no flaws in the judicial processes leading to the conviction of a defendant, a federal judge has no inherent power to suspend

either the imposition or the execution of sentence on the defendant. *Ex parte United States*, 242 U.S. 27, 51–52, 37 S.Ct. 72, 78–79, 61 L.Ed. 129 (1916). The only source of the power to suspend sentence is 18 U.S.C. § 3651, which provides that the court "may suspend the imposition or execution of sentence and place the defendant on probation." *See United States v. Murray*, 275 U.S. 347, 357, 48 S.Ct. 146, 149, 72 L.Ed. 309 (1928); *Fiore v. United States*, 696 F.2d 205, 207 (2d Cir.1982). Under § 3651, however, the court has "no power to suspend a sentence without also imposing a term of probation." *United States v. Ellenbogen*, 390 F.2d 537, 541 (2d Cir.), *cert. denied*, 393 U.S. 918, 89 S.Ct. 241, 21 L.Ed.2d 206 (1968). Thus, a judgment that purports to suspend sentence without imposing probation is a nullity. *Miller v. Aderhold*, 288 U.S. 206, 210–11, 53 S.Ct. 325, 325–26, 77 L.Ed. 702 (1933); *United States v. Corson*, 449 F.2d 544, 550 (3d Cir.1971); *United States v. Fried*, 436 F.2d 784, 787 (6th Cir.), *cert. denied*, 403 U.S. 934, 91 S.Ct. 2264, 29 L.Ed.2d 714 (1971). Accordingly, since the court did not place BPI on probation, its suspension of sentence on BPI was void.[4]

 The absence of a condition of probation likewise makes void the court's order that BPI make restitution. The federal court has no inherent power to order a convicted defendant to make restitution. The court's otherwise broad discretion to determine the punishment to be imposed on a defendant is circumscribed by the sentencing limitations established by statute. *United States v. Tucker*, 404 U.S. 443, 446–47, 92 S.Ct. 589, 591–92, 30 L.Ed.2d 592 (1972). Just as the federal court has no inherent power to try criminal charges that are not based on a federal statute, *United States v. Hudson*, 11 U.S. (7 Cranch) 32, 3 L.Ed. 259 (1812), and no power in the absence of statute to refuse to

---

**4.** In light of the sentencing court's order that BPI make restitution, the fact that the court's suspension of sentence without an order of probation was void does not deprive this Court of jurisdiction to hear BPI's appeal. "[C]ertainly

when discipline has been imposed, the defendant is entitled to review." *Korematsu v. United States*, 319 U.S. 432, 434, 63 S.Ct. 1124, 1125, 87 L.Ed. 1497 (1943).

impose punishment after a proper conviction, *Ex parte United States, supra,* it has no inherent power to impose punishments that are not provided for by a federal statute applicable to the offense for which the defendant was convicted, *United States v. Best,* 573 F.2d 1095, 1101 (9th Cir.1978); *see Fiore v. United States, supra,* 696 F.2d at 209.[5] In the present case the only source of the court's power to order restitution is 18 U.S.C. § 3651,[6] which provides that "[w]hile on probation and among the conditions thereof, the defendant ... [m]ay be required to make restitution ...." Since the court did not place BPI on probation, the order that BPI make restitution was not a condition of probation and hence was not authorized by § 3651.

It is unclear, in light of the court's imposition of a condition of probation on Elkin, whether the court intended to impose such a condition on BPI as well. No reason appears in the record to explain the difference in the treatments of the two defendants, and the court's attempt to impose an order of restitution suggests that the court sought to deal with BPI under § 3651. Nevertheless, since BPI was not in fact placed on probation, both the suspension of the imposition of sentence and the order that BPI make restitution were beyond the court's power. Accordingly, the judgment against BPI must be vacated and the matter remanded for the imposition of a valid sentence on it. We turn now to the matter of the propriety of the court's orders of restitution to the government and the subcontractors.

**5.** The court may not, for example, impose a fine in excess of the statutory maximum provided by Congress for the offense, whether or not the fine is imposed as a condition of probation. *See Fiore v. United States, supra; Higdon v. United States,* 627 F.2d 893, 898 (9th Cir.1980).

**6.** In enacting the Victim and Witness Protection Act of 1982, Congress added § 3579 to title 18 U.S.C., which, with respect to offenses occurring after January 1, 1983, permits the sentencing court to order a convicted defendant to make restitution to any victim of the offense, indepen-

**B.** *Restitution to the Government*

In ordering the defendants to make restitution to the government in the amount of $119,534, the trial court took into account the fact that the presentence report on the defendants stated that in addition to the payment of $65,142 received following the June 1979 Request, defendants had requested and received two additional progress payments totaling $54,392. The government thus contends that the restitutionary order was proper because $119,534 represented the total actual damages the government suffered as a result of defendants' fraudulent scheme. It argues that particularly in a case involving not an isolated offense, but a complex scheme to defraud, the amount of restitution that a court may lawfully order should not be limited by the amount charged in the indictment. This argument is unsupportable.

The restitutionary provision of § 3651 is as follows:

> While on probation and among the conditions thereof, the defendant—
>
> . . . .
>
> May be required to make restitution or reparation to aggrieved parties for actual damages or loss caused by the offense for which conviction was had;
>
> . . . .

In *United States v. Tiler,* 602 F.2d 30 (2d Cir.1979), we noted that the "well-settled construction" of this provision "is that restitution may be ordered as a condition of probation only for actual damages flowing from the specific crime charged in the indictment of which the defendant is convicted either after a trial or a plea of guilty."

dently of whether the defendant is placed on probation. The Senate Judiciary Committee Report accompanying the bill that included § 3579 pointed out that "[s]ection 3579 permits the court, for the first time, to order payment of restitution independently of a sentence of probation.... Current law does not contain a provision covering an order of restitution as a part of any sentence other than probation." S.Rep. No. 97–532, 97th Cong., 2d Sess. 30 (1982), *reprinted in* 1982 U.S.Code Cong. & Ad.News 2515, 2536.

*Id.* at 33. Similarly, in *Fiore v. United States, supra,* 696 F.2d at 209, we stated that the provisions of § 3651 do not "allow the sentencing court to impose fees and charges at will on the defendant. . . . Nor may the defendant be required to pay reparations for crimes of which he has not been specifically convicted."

In the present case, the indictment did not charge that the government had paid $119,534 in fraudulent claims; it focused only on the first fraudulent request for a progress payment and charged only that the government had paid defendants $65,-142. Nor did the proof at trial show that the government had paid the defendants any more than the $65,142 charged. Thus, the government neither pleaded nor proved what it now claims are its actual damages. When asked at oral argument of this appeal why the indictment and proof were so limited, the government responded that it was easier for it to prove a case against the defendants if the charges were limited to the first progress payment. We appreciate the government's candor, but we would consider it manifestly unfair for the government to be allowed to narrow its case in order to avoid being put to its proof as to other progress payments, and yet collect for those other payments on the basis of its assertion that it is due the larger amounts.

In seeking to uphold the award of restitution to it in the larger amount, the government points to the Ninth Circuit's decision in *Phillips v. United States,* 679 F.2d 192 (9th Cir.1982), involving a mail fraud prosecution in which the court upheld a restitutionary award that was greater than any of the sums charged in the undismissed counts of the indictment. The government's reliance is misplaced. In *Phillips,* the ruling turned on the fact that the defendant had entered a guilty plea to several counts of the indictment, and as part of his plea bargain *he had agreed* to make the restitutionary payments of which he subsequently complained. Thus, the court of appeals, after noting that restitution generally may be made a probation condition only for amounts in counts upon

which there was a conviction, *id.* at 194, ruled that a defendant who agrees to make restitution in greater amounts may be compelled to honor his agreement:

> We feel that when a defendant consents pursuant to a plea agreement to pay such a restitutionary amount and such plea bargain is fully explored in open court and the defendant thereafter signs a stipulation to the effect that restitution in such a sum is to be paid, then the Court is bound by law to carry out that specific agreement.

*Id.* Accord *United States v. Landay,* 513 F.2d 306, 308 (5th Cir.1975) (amount of restitution proper since defendant "freely and voluntarily admitted [owing that] exact amount"); *United States v. Taylor,* 305 F.2d 183, 187 (4th Cir.) (judge could "properly require, as a condition of probation, payment of those taxes reported by the defendant as due for 1958, 1959 and 1960 since such liability is admitted"), *cert. denied,* 371 U.S. 894, 83 S.Ct. 193, 9 L.Ed.2d 126 (1962).

In contrast, the defendants here have neither agreed to make restitution nor admitted liability for the other two progress payments. We are unimpressed by the government's argument that defendants have in effect admitted liability for the entire $119,534 by failing to examine the presentence report and to protest the award at the sentencing. As the government concedes, defendants were under no obligation to review the presentence report, and, as we observed in *Fiore v. United States, supra,* 696 F.2d at 209, "[a] presentence report is not the place to decide a defendant's . . . liability." Accord *United States v. Brown,* 699 F.2d 704, 711 (5th Cir.1983). Because defendants' liability for the second two progress payments is a matter "not . . . conceded by [defendants] or tried by the court below," *Fiore v. United States, supra,* 696 F.2d at 209, defendants may not be required to pay those additional sums.

### C. *Restitution to the Subcontractors*

 For several reasons we also conclude that the order that the defendants

make restitution of $69,785 to Excelsior and $29,840 to R & H was improper. Under § 3651, a defendant may be required to make restitution only to *"aggrieved parties* for actual damages or loss *caused by the offense* for which conviction was had." (Emphasis added.) This provision allows an order of restitution "only for actual damages flowing from the specific crime charged in the indictment of which the defendant is convicted." *United States v. Tiler, supra,* 602 F.2d at 33. On the record before us, we are unable to conclude that the amounts ordered constituted the subcontractors' "actual damages." Further, we are unable to view the subcontractors as parties "aggrieved" by the crimes charged, since, even assuming that BPI owes Excelsior $69,785 and R & H $29,840, those debts did not flow from the crimes of mail fraud or submitting false statements and a false claim to the government. Although the defendants used Excelsior and R & H in order to defraud the government, defendants' failure to pay these companies for their services resulted not from the crime of defrauding the government, but from an independent breach of the contracts defendants had with them. BPI presumably would owe the subcontractors those sums even if it had not requested or received a cent from the government. Thus, there has been no showing that the subcontractors' actual damages—whatever they may be—were "caused by" the offenses of which the defendants were convicted.

The government argues that the order of restitution to the subcontractors may be sustained either on the basis that § 3651 permits the court to order a payment to the "vehicle" of the defendants' frauds (Government's brief on appeal at 42–43), or on the basis that it was within "the sentencing court's general probation power" because it was "consistent with the rehabilitation of these defendants." (*Id.* at 43.) We are unpersuaded. In support of its "vehicle" theory, the government relies principally on *United States v. Margala,* 662 F.2d 622 (9th Cir.1981), in which Margala had engaged in a complex scheme to defraud and freeze out the stockholders of a corporation, and the Ninth Circuit upheld a condition of probation requiring him to forfeit pension benefits and stock he had acquired in another corporation that was a vehicle for the fraudulent scheme. We do not find in *Margala* support for the action taken in the present case. Although the *Margala* court quoted portions of § 3651 that deal with the impositions of fines and requirements of restitution, the district court's orders in *Margala* were not restitutionary. Restitution is defined as the "restoration of anything to its rightful owner," Black's Law Dictionary 1477 (4th ed. 1951), and there is no indication that Margala did not give full value for the stocks or pension benefits. *But cf. Fiore v. United States, supra,* 696 F.2d at 210 n. 4 (hypothesizing that the *Margala* forfeiture order could be covered by the restitutionary provisions of § 3651). Rather, *Margala* falls under the provisions of § 3651 that give the sentencing judge broad discretion to fashion probationary conditions that he believes will serve the ends of justice. Notwithstanding this general broad discretion, the statute provides that where restitution is a condition of probation, specific criteria must be met. We construe Congress's specific limitations as circumscribing the court's general power under the statute to order restitution. *See United States v. Prescon Corp.,* 695 F.2d 1236, 1243 (10th Cir.1982).

## CONCLUSION

The convictions are affirmed. The judgments are vacated, and the case is remanded to the district court for resentencing. The mandate shall issue forthwith.