**UNITED STATES of America,
Respondent,**

v.

**Yvon J. NAZON, Movant.**

**No. 2:96–CV–37–RL.**

United States District Court,
N.D. Indiana,
Hammond Division.

Aug. 7, 1996.

Allan A. Ackerman, Chicago, IL, for movant.

U.S. Attorney Jon E. DeGuilio, Asst. U.S. Atty. Andrew B. Baker, Jr., U.S. Attorneys Office, Dyer, IN, for respondent.

## ORDER

LOZANO, District Judge.

This matter is before the Court on the Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, Or Correct Sentence By a Person in Federal Custody, filed by movant, Yvon J. Nazon, on February 14, 1996. For the reasons set forth below, the motion is **DENIED,** and the Clerk is **ORDERED** to enter judgment dismissing this case with prejudice.

*BACKGROUND*

A jury found Yvon J. Nazon guilty of seventeen counts of submitting false Medicaid claims in violation of 18 U.S.C. section 287. Nazon was sentenced to five years of probation, work release, community service, a $51,000 fine, and restitution. He took an appeal and lost. *United States v. Nazon,* 940 F.2d 255 (7th Cir.1991). Nazon's probation is now over, but apparently he has not yet paid his fine and may have a limited ability to practice medicine.

Nazon's current motion alleges that this Court erred by not instructing his jury to decide whether the false claims he submitted to Medicaid were material. Nazon also suggests that the Court erred by telling the jury that, as a matter of law, the Department of Health and Human Services is a "department" or "agency" of the United States within the meaning of section 287. These arguments are not persuasive.

*DISCUSSION*

I. Source of Relief

A minor threshold question is what source of relief Nazon invokes with his motion. He calls the motion one under 28 U.S.C. section 2255. The Government suggests that because Nazon is not in custody, the motion is actually a request for a writ of error *coram nobis.*

▇▇▇ Only a person in custody under a court's sentence can bring a section 2255 motion. *Howard v. United States,* 962 F.2d 651, 653 (7th Cir.1992). Still, a defendant who has been released from custody can seek a writ of error *coram nobis.* "As a substitute for the 'custody' requirement" of section 2255," the defendant "must show that he or she is under a substantial legal disability." *Id.* The writ of error *coram nobis* "affords the same general relief" as does section 2255. *Id.*

The parties seem to concur that although Nazon is not in custody, his unpaid fine and possibly other factors make him an appropriate candidate for a writ of error *coram nobis* if not for section 2255 relief. The parties also seem to concur that whether a *coram nobis* or section 2255 proceeding, the issues here would be the same. The Court will approach the issues as the parties have framed them, although it does not thereby endorse the framing as correct.

II. Materiality

As noted, Nazon argues that the Court should have instructed his jury to determine materiality as an element of the charges against him under 18 U.S.C. section 287. That statute states as follows: "Whoever makes or presents . . . to any department or agency [of the United States], any claim upon or against the United States, or any department or agency thereof, knowing such claim to be false, fictitious, or fraudulent" thereby violates section 287.

At Nazon's trial, the Court did not instruct the jury to determine materiality as an element of the section 287 charges. Nazon argues that the Court erred in light of *Unit-*

ed States v. Gaudin, —— U.S. ——, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995), which issued several years after his conviction became final.

*Gaudin* ruled that a district court erred when it, rather than the jury, decided the question of materiality. The defendant was charged with making false statements in federal loan documents in violation of 18 U.S.C. section 1001. —— U.S. at ——, 115 S.Ct. at 2312. Rather than have the jury decide whether the statements were material, the district court instructed the jury that they were material. *Id.* at ——, 115 S.Ct. at 2313. Before the Supreme Court, the parties agreed (although the Court did not actually decide) that materiality of the false statements was an element of the offense. *Id.* at —— & ——, 115 S.Ct. at 2313 & 2320 (Rehnquist, C.J., concurring). Where the parties differed was on whether the trial judge or the jury should have decided the materiality element. *Id.* at ——, 115 S.Ct. at 2313. Invoking the Fifth and Sixth Amendments, the Supreme Court concluded that the jury should have decided it. *Id.* at ——, 115 S.Ct. at 2320.

Nazon argues that under *Gaudin*, his jury should have been instructed that materiality was an element of his offenses that they had to decide. As is common in collateral attacks, the Government offers several counter-arguments that mostly turn on complex procedural doctrines.

## A. Procedural Default

■ The Government first argues that Nazon's *Gaudin* argument is barred by the procedural default doctrine. The Government is correct, because Nazon never argued on appeal that materiality is an element of his offenses.

Although Nazon's source of relief is uncertain, the Court will apply the section 2255 procedural default doctrine here. Courts seem to apply the procedural default rules that have developed around section 2255 motions to petitions for *coram nobis* relief. *See United States v. Barber*, 881 F.2d 345, 348 (7th Cir.1989), *cert. denied*, 495 U.S. 922, 110 S.Ct. 1956, 109 L.Ed.2d 318 (1990); *United States v. Velasquez*, 1995 WL 608560, at *1

(N.D.Ill. Oct. 13, 1995). The parties seem to agree that the section 2255 rules apply here.

■ Those rules make clear that a section 2255 motion is "neither a recapitulation of nor a substitute for ‘a direct appeal." *McCleese v. United States*, 75 F.3d 1174, 1177 (7th Cir.1996) (quoting *Belford v. United States*, 975 F.2d 310, 313 (7th Cir.1992), *overruled on other grounds, Castellanos v. United States*, 26 F.3d 717 (7th Cir.1994)). As such, a defendant pursuing a section 2255 motion has limited ability to raise issues not raised on appeal. *See id.* As for a constitutional issue not raised on appeal, a section 2255 motion may raise it only if the defendant shows (1) cause for and prejudice from failing to raise the issue, or (2) that the court's refusing to address the issue "would lead to a fundamental miscarriage of justice." *McCleese*, 75 F.3d at 1177.

Nazon's *Gaudin* argument is a constitutional argument not raised on appeal. The text of *Gaudin* clearly indicates that it is based specifically on the Fifth and Sixth Amendments. —— U.S. at —— – ——, —— – ——, 115 S.Ct. at 2313–14, 2318–20. Lower courts have viewed *Gaudin* as a constitutional decision. *See, e.g., United States v. Ross*, 77 F.3d 1525, 1539 (7th Cir.1996); *United States v. Holland*, 919 F.Supp. 431, 433–34 (N.D.Ga.1996). Nazon concedes that he did not raise his *Gaudin* argument on appeal. Accordingly, Nazon must show cause-and-prejudice or a fundamental miscarriage of justice before the Court will address the merits of the argument.

Regarding cause, the parties appear to agree that *Gaudin* was an unexpected decision which reversed the then-prevailing view among lower courts that the trial judge ordinarily decides any materiality element of a criminal offense. The Government concedes that because Nazon's trial and appeal occurred before *Gaudin*, he had no basis for arguing on appeal that his jury should have decided any materiality element rather than this Court.

However, this does not end the cause analysis in Nazon's favor. *Gaudin* stands for the proposition that *when materiality is an element*, the jury decides it. As outlined in

more detail below, whether materiality is actually an element of Nazon's particular offense has been an open question in the Seventh Circuit from the time of Nazon's trial, through *Gaudin*, and through the present day. However, Nazon concedes: (1) at trial, he never asked for any materiality determination, whether by the Court or by the jury; (2) at trial, the Court did not treat materiality as an element which it decided as a matter of law; and (3) on appeal, Nazon did not argue that materiality is an element.

So, the Government argues as follows: Nazon *could have* argued on appeal (not to mention at trial) that materiality is an element of his charges, but he did not. Because he did not make this first argument on appeal, Nazon also did not reach and could not have reached the primary argument of his current motion, i.e., that under *Gaudin*, his jury should have decided materiality. Because he never made this primary argument on appeal, he may not make it now. In sum, because Nazon has no cause for not raising the basic and then-available argument that materiality is an element that *someone* must decide, he has no cause for not raising the subordinate and then-unavailable argument that the *jury* makes such a decision.

Neither party has offered any authority on this precise notion. However, the Court has identified a Supreme Court case that appears substantially on point, *Dugger v. Adams*, 489 U.S. 401, 109 S.Ct. 1211, 103 L.Ed.2d 435 (1989).

*Dugger* involved a state murder case where the trial judge told the jury that although they could recommend a death sentence, he alone would ultimately decide whether to impose one. These comments did not accurately describe the jury's role in capital sentencing under the prevailing state law. After the defendant's conviction became final, the Supreme Court decided *Caldwell v. Mississippi*, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985), under which the trial judge's comments arguably violated the Eighth Amendment. The *Dugger* defendant then filed a habeas petition asserting a claim based on *Caldwell*. *Dugger*, 489 U.S. at 403–06, 109 S.Ct. at 1213–15. He asserted that by inaccurately describing the jury's role un-

der state law, the trial judge's comments violated the Eighth Amendment as interpreted in *Caldwell*. *Id*. at 407–08, 109 S.Ct. at 1215–16. To establish cause for not raising the *Caldwell* argument before his conviction became final, the defendant asserted that the *Caldwell* ruling was unexpected, making his *Caldwell* argument previously unavailable. *Id*. at 407, 109 S.Ct. at 1215.

Nonetheless, the Supreme Court found cause lacking. It stressed that the defendant could have argued before his conviction became final that the trial judge's comments violated state law, but he did not. Therefore, he had no cause for failing to raise that state law argument. Because the defendant had to prevail on the state law argument to prevail on his *Caldwell* argument, neither could he demonstrate cause for failing to raise the *Caldwell* argument. *Dugger*, 489 U.S. at 408–10, 109 S.Ct. at 1215–17. As the *Dugger* Court concluded: "[W]hat is determinative in this case is that the [previously available] ground for challenging the trial judge's instructions—that they were objectionable under state law—*was a necessary element* of the subsequently available *Caldwell* claim. In such a case, the subsequently available federal claim does not excuse the procedural default." *Id*. at 410, 109 S.Ct. at 1217 (emphasis added).

Likewise, Nazon failed to raise a necessary element of his subsequently available *Gaudin* claim. Nazon could have argued at trial and on appeal that materiality is an element of his offense, but he did not. The materiality-is-an-element argument is necessary to Nazon's *Gaudin* argument—of course, if materiality is not an element, Nazon was not entitled to a jury instruction on it regardless of *Gaudin*. *See United States v. Elkin*, 731 F.2d 1005, 1009–10 (2d Cir.), *cert. denied*, 469 U.S. 822, 105 S.Ct. 97, 83 L.Ed.2d 43 (1984). In short, because Nazon has no cause for failing to argue on appeal that materiality is an element that someone must decide, he cannot now establish cause for failing to argue that the someone is the jury.

■ The Court recognizes that *Dugger* is not a perfect fit. It appears to rest in part on comity considerations that do not exist with a federal defendant. 489 U.S. at 409–

10, 109 S.Ct. at 1216–17. Also, some factual distinctions might exist. But the primary thrust of *Dugger* remains and certainly influences this case: When an argument available on appeal forms a "necessary element" of an argument not available until later on collateral attack, a defendant cannot establish cause for failing to raise the later argument on appeal. *See* 489 U.S. at 410, 109 S.Ct. at 1217.

■ Besides *Dugger*, the basic purposes that underlie the procedural default doctrine favor deeming Nazon's *Gaudin* argument defaulted. We apply procedural default rules to federal defendant habeas motions to encourage defendants to raise their arguments where they primarily belong, in the trial court and on direct review, and to guard the finality of convictions. *Singleton v. United States*, 26 F.3d 233, 237 n. 9 (1st Cir.), *cert. denied*, ── U.S. ──, 115 S.Ct. 517, 130 L.Ed.2d 423 (1994); *see Brecht v. Abrahamson*, 507 U.S. 619, 632–37, 113 S.Ct. 1710, 1719–21, 123 L.Ed.2d 353 (1993) (applying these principles in the state habeas petitioner context). Nazon had both an incentive and the ability to argue at trial and on appeal that the Government had to prove materiality to someone; whoever decides it, every extra element adds something more that the prosecutor must prove to convict. At trial and on appeal, Nazon's counsel passed on the materiality-is-an-element argument either unwittingly or because he picked other battles. Now *Gaudin* has arrived on the scene, and to make it work Nazon must first prevail on the argument that he previously passed on. As such, contrary to what Nazon insists, *Gaudin* does not supply him with an entirely new theory that he could not have raised before. Rather, all *Gaudin* does is give Nazon fodder for attempting to reopen a conviction on collateral attack by expanding a theory he could have used before.

In sum, Nazon has not established cause for failing to raise his *Gaudin* argument before now. Consequently, he cannot cure his default through the cause-and-prejudice exception.

Neither can Nazon cure the default through the exception reserved for cases where refusing to consider the merits of a claim would cause a fundamental miscarriage of justice. Nazon's counsel has not mounted any meaningful argument toward meeting this exception. Accordingly, the Court will not consider the exception it further.

Nazon's *Gaudin* argument is barred by the procedural default doctrine.

### B. Retroactive Application of *Gaudin*

■ Even assuming Nazon has not procedurally defaulted his *Gaudin* argument, he is also blocked by the Government's next argument: that he cannot apply *Gaudin* retroactively because of the doctrine of *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). Under *Teague* and its progeny, a defendant who is collaterally attacking a final conviction may not use a new rule of constitutional criminal procedure announced after the conviction became final, unless one of two exceptions applies: (1) the new rule decriminalizes a class of conduct or prohibits giving a certain punishment to a class of defendants because of their status or offense, or (2) the new rule is a watershed rule of procedure that makes accurate verdicts substantially more likely and is essential to fundamental fairness.[1]

■ Regardless of whether Nazon seeks *coram nobis* or section 2255 relief, *Teague* potentially governs. Although *Teague* was first applied to state prisoner habeas petitions, it also "applies to attempts by federal prisoners under § 2255 to benefit from constitutional decisions of criminal procedure handed down after their convictions are no

---

1. *See generally Gray v. Netherland*, ── U.S. ──, ────, 116 S.Ct. 2074, 2084–85, 135 L.Ed.2d 457 (1996); *Goeke v. Branch*, ── U.S. ──, ────, 115 S.Ct. 1275, 1277–78, 131 L.Ed.2d 152 (1995); *Caspari v. Bohlen*, 510 U.S. 383, 389–90, 394–96, 114 S.Ct. 948, 953, 956, 127 L.Ed.2d 236 (1994); *Sawyer v. Smith*, 497 U.S. 227, 233, 242–43, 110 S.Ct. 2822, 2826–27, 2831–32, 111 L.Ed.2d 193 (1990); *Saffle v. Parks*, 494 U.S. 484, 487–88, 494–95, 110 S.Ct. 1257, 1259–60, 1263–64, 108 L.Ed.2d 415 (1990); *Teague*, 489 U.S. at 307, 310–13, 109 S.Ct. at 1073–74, 1075–77 (plurality opinion); *Jones v. Page*, 76 F.3d 831, 853–54 (7th Cir.1996); *Callanan v. United States*, 881 F.2d 229, 231 n. 1 (6th Cir.1989), *cert. denied*, 494 U.S. 1083, 110 S.Ct. 1816, 108 L.Ed.2d 946 (1990).

longer subject to direct review." *Van Daalwyk v. United States*, 21 F.3d 179, 183 (7th Cir.1994). As for *coram nobis* petitions, the Court sees no obvious reason why *Teague* would not apply, and Nazon has not argued otherwise.

Nazon expressly or effectively concedes that part of the *Teague* doctrine works against him. He concedes that *Gaudin* announced a new rule (a concession the Court accepts arguendo) and that his motion is a collateral attack on a conviction that became final before *Gaudin*. However, he asserts that *Gaudin* delivered a statutory interpretation, not a constitutional rule of procedure. He also argues that the *Teague* exceptions apply. These arguments are unavailing.

Nazon incorrectly insists that *Gaudin* somehow established as a matter of statutory interpretation both that materiality is an element of his offense statute and that the jury must decide the element. As already suggested, *Gaudin* was a constitutional criminal procedure decision, not one of statutory interpretation. The *Gaudin* Court referred to the rule it established as "not only procedural but rest[ing] on an interpretation of the Constitution," namely, the Fifth and Sixth Amendments. —— U.S. at ——, —— – ——, 115 S.Ct. at 2313, 2318–19. Furthermore, *Gaudin* did not read a materiality element into *any* statute. The Justices merely stated that *assuming* materiality is an element of section 1001, the jury must decide it; they steered clear of deciding whether section 1001 actually does contain a materiality element, and they never mentioned Nazon's offense statute, section 287. *Id.* at —— & —— – ——, 115 S.Ct. at 2313 & 2320–21 (Rehnquist, C.J. concurring). Rather than interpreting a statute, *Gaudin* quite clearly delivered the type of constitutional rule to which *Teague* applies absent an exception.

Turning to the exceptions, the first can be dispensed with quickly. *Gaudin* in no way decriminalizes a class of conduct or shields a class of persons from punishment. Rather, it merely takes a decision-making duty from the judge and gives it to the jury. *Accord Holland*, 919 F.Supp. at 434.

Neither can Nazon employ the rarely available second *Teague* exception. That ex-ception only applies to a new rule that bears two aspects: it makes accurate verdicts substantially more likely, and it is necessary to fundamental fairness. *Sawyer*, 497 U.S. at 242–43, 110 S.Ct. at 2831–32. The second aspect may be more demanding. While a fair number of rules may enhance verdict accuracy, few also break such ground as to " 'alter our understanding of the *bedrock procedural elements* ' essential to the fairness of a proceeding." *Sawyer*, 497 U.S. at 242, 110 S.Ct. at 2831 (quoting *Teague*, 489 U.S. at 311, 109 S.Ct. at 1076). Perhaps most rules that would satisfy the second aspect have already been recognized, making the likelihood of a new one emerging slim, *id.* at 243, 110 S.Ct. at 2832, although it might be hasty to conclude "that we have already discovered all those procedures essential to fundamental fairness," *id.* at 257, 110 S.Ct. at 2840 (Marshall, J., dissenting).

In short, only those few rules that both substantially enhance verdict accuracy and add to the limited and already well-developed core of "fundamental fairness" principles will qualify for the second *Teague* exception. *See Sawyer*, 497 U.S. at 242–43, 110 S.Ct. at 2831–32; *Jones v. Page*, 76 F.3d 831, 853–54 (7th Cir.1996); *Williams v. Chrans*, 945 F.2d 926, 942–43 (7th Cir.1991), *cert. denied*, 505 U.S. 1208, 112 S.Ct. 3002, 120 L.Ed.2d 877 (1992). What follows from this proposition is that not all new constitutional rules, nor even all rules tied to any given amendment, will fall within the exception. *See Jones*, 76 F.3d at 854 (noting that although the basic right to counsel might have qualified for the second exception not all subsequent refinements of the right would do so). We may tend to think of all constitutional protections as fundamental, but not all are fundamental in the sense of the second *Teague* exception.

Here, the two aspects of the second exception work against Nazon, and they seem intertwined. First, the *Gaudin* rule does not make an accurate verdict substantially more likely. What *Gaudin* essentially did was take the materiality decision from the judge and reassign it to the jury. Although judges and juries might go about making the decision in different ways and sometimes reach

different conclusions, a jury is not likely to be regularly and substantially more accurate than a judge. *Accord Holland,* 919 F.Supp. at 434–35. Either way, the evidence is the same, the substantive law is the same, and the defendant has a competent, impartial decision-maker.

 This conclusion accords with a basic purpose of the right to trial-by-jury: vesting power over life and liberty in randomly chosen citizen juries rather than in a static group of judges and prosecutors who, if so inclined, can abuse their power. *Lewis v. United States,* —— U.S. ——, —— – ——, 116 S.Ct. 2163, 2171–74, 135 L.Ed.2d 590 (1996) (Kennedy, J., concurring in the judgment); *Carella v. California,* 491 U.S. 263, 268–69, 109 S.Ct. 2419, 2422–23, 105 L.Ed.2d 218 (1989) (Scalia, J., concurring in the judgment); *Duncan v. Louisiana,* 391 U.S. 145, 155–56, 88 S.Ct. 1444, 1451, 20 L.Ed.2d 491 (1968). We prefer to have juries decide elements not necessarily because they are better able to decide them accurately, but because our tradition views them as a better general repository of the tremendous power of determining guilt or innocence. *See id.* Thus, the *Gaudin* rule does not so much represent a change to better ensure accurate verdicts as a change to protect the right, valued in our system and society, to have a lay jury decide guilt or innocence. *Gaudin* itself suggests as much. *See* —— U.S. at ——, 115 S.Ct. at 2314.

The *Gaudin* rule's aim and effect regarding verdict accuracy also informs the analysis of the fundamental fairness aspect of the second *Teague* exception. Both before and after *Gaudin,* a part of any conviction of an offense with a materiality element was and will be that *someone* decides whether the element has been proved. This Court believes that as long as a conviction rests on a trier's finding of every element beyond a reasonable doubt, the defendant has received fundamentally fair procedure within the meaning of the second exception. Put another way, although the general right to have a

materiality element proved beyond a reasonable doubt might belong to the *Teague* core of fundamental fairness, the specific *Gaudin* right to have the jury decide whether it has been proved does not.[2] Either way, the defendant gets an accurate decision-maker, which ensures fundamental fairness.

This Court recognizes that other courts have considered *Gaudin* error and similar error to be serious. Employing a plain error analysis on direct appeal, the Seventh Circuit concluded that *Gaudin* error (i.e., a trial judge deciding materiality) affected a defendant's "substantial rights" and suggested that such error could never be deemed "harmless" on direct review. *United States v. Ross,* 77 F.3d 1525, 1540 (7th Cir.1996) (applying *United States v. Olano,* 507 U.S. 725, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993)); *accord United States v. Gaudin,* 28 F.3d 943, 952 (9th Cir.1994). Also on direct appeal, the First Circuit branded *Gaudin* error a "structural defect" that could never be deemed harmless. *United States v. DiRico,* 78 F.3d 732, 737–38 (1st Cir.1996). Invoking the second *Teague* exception on collateral review, the Fourth Circuit retroactively applied the rule that bars a diluted reasonable doubt standard in jury instructions, concluding that such a standard is a "structural defect" which "crippl[es]" verdict accuracy and eliminates the "bedrock procedural requirement" that a jury find every element beyond a reasonable doubt. *Adams v. Aiken,* 41 F.3d 175, 178–79 (4th Cir.1994), *cert. denied, sub nom.,* —— U.S. ——, 115 S.Ct. 2281, 132 L.Ed.2d 284 (1995) (citing *Sullivan v. Louisiana,* 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993) and *Cage v. Louisiana,* 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990)). Also applying the second exception, the Ninth Circuit concluded that "there can be no fundamental fairness" when a trial court fails to supply the jury with any elements instructions at all. *Harmon v. Marshall,* 69 F.3d 963, 966 (9th Cir.1995).

The principles expressed in these cases are noteworthy, but they do not govern Nazon's motion. None of these cases confronted the

---

**2.** In pre-*Gaudin* practice, some judges may have used a standard less demanding than the reasonable doubt standard in assessing materiality. *Gaudin,* —— U.S. at —— n. 1, 115 S.Ct. at 2313

n. 1. Use of such a standard would of course add concerns, but they are not relevant to Nazon's arguments and would not undermine the current analysis.

precise question before this Court: whether the *Gaudin* rule enhances verdict "accuracy" and also adds to the "bedrock procedural elements essential to the fairness of a proceeding" within the meaning of the *Teague* doctrine. None of these cases overcomes the observations above that having the jury rather than the judge decide materiality does not substantially enhance verdict accuracy or remedy some fundamental unfairness. In short, *Teague* is the specific operative doctrine here, the *Gaudin* rule is the specific rule at hand, and *Teague* dictates that the rule should not receive retroactive application.

The second *Teague* exception embodies a demanding standard that, at bottom, may simply embrace only those rules that are crucial to a criminal trial's primary function: accurately determining the defendant's factual guilt or innocence. *See* 2 James S. Liebman & Randy Hertz, *Federal Habeas Corpus Practice & Procedure* § 25.8, p. 800–01 (2d ed. 1994). The *Gaudin* rule, which allocates the guilt-or-innocence decision between two similarly accurate decision-makers—as opposed to dictating whether a decision gets made at all—does not fit this bill.

Nazon's *Gaudin* argument fails for the additional reason that the *Teague* doctrine bars retroactive application of *Gaudin*.

### C. Whether Materiality is an Element

Of course, even if Nazon could get past the barriers of the procedural default and *Teague* doctrines, he would still have to show something more basic: that materiality is actually an element of section 287. If not, Nazon had no right to a jury instruction on materiality. *See Elkin*, 731 F.2d at 1009–10.

Whether materiality is an element is a tough question. The Supreme Court has not spoken. Several circuits have issued conflicting rulings or comments on whether section 287—which nowhere contains the word "material"—has a materiality element.[3] For its part, the Seventh Circuit has only sent uncertain hints.[4] (Once again, these uncertain hints and the split among the other circuits show that Nazon could have argued at trial and on appeal that section 287 has a materiality element.) Because the ruling so far disposes of Nazon's materiality argument on more than one ground, the Court will not attempt to predict what the Seventh Circuit would decide.

### D. "Harmless Error"

Finally, the Government suggests that even if Nazon was entitled to a materiality instruction, the evidence overwhelmingly showed that Nazon's claims were material. This sounds like a type of harmless error argument. Yet the Government has not attempted to apply the relevant and potentially complex standard. As such, the Court will not address this argument.

### III. "Department" or "Agency" Instruction

Nazon's counsel offers a terse suggestion that the Court erred in instructing his jury as a matter of law that the Department of Health and Human Services is a "department" or "agency" of the United States. He cites *Hubbard v. United States*, —— U.S. ——, 115 S.Ct. 1754, 131 L.Ed.2d 779 (1995), which held that courts do not fall within the definition of "department" or "agency" for purposes of section 1001. Counsel does not explain the significance of *Hubbard* to his motion—he merely mentions it in passing and offers cryptic parentheticals of later ap-

---

**3.** *E.g., United States v. Taylor*, 66 F.3d 254, 255 (9th Cir.1995); *United States v. Wells*, 63 F.3d 745, 750 (8th Cir.1995), *cert. granted*, —— U.S. ——, 116 S.Ct. 1540, 134 L.Ed.2d 645 (1996); *United States v. Parsons*, 967 F.2d 452, 455 (10th Cir.1992); *Elkin*, 731 F.2d at 1009; *United States v. Pruitt*, 702 F.2d 152, 155 (8th Cir.1983); *United States v. Adler*, 623 F.2d 1287, 1291 n. 5 (8th Cir.1980); *United States v. Snider*, 502 F.2d 645, 652 n. 12 (4th Cir.1974).

**4.** *See* Fed.Crim.Jury Instruc. of the Seventh Circuit Vol. II, p. 40 (1983) (elements instructions

for section 287 containing no express materiality element); *United States v. Catton*, 89 F.3d 387, 388, 391–92 (7th Cir.1996) (perhaps suggesting that a materiality element is implicit or embedded in the other elements of section 287); *United States v. Staniforth*, 971 F.2d 1355, 1358 (7th Cir.1992) (demonstrating a willingness to read a materiality element into a statute that does not expressly create one); *United States v. Shriver*, 842 F.2d 968, 976–77 (7th Cir.1988) (same).

pellate cases. Counsel cannot expect the Court to wade through and chase down string cites and footnotes on the off chance that they may flesh out an argument he himself only hints at. Also, if what counsel intends is to extrapolate his *Gaudin* argument, he would seem to run into the procedural default and *Teague* pitfalls again. In sum, this argument does not merit serious analysis and is rejected.

*CONCLUSION*

For the foregoing reasons, the Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, Or Correct Sentence By a Person in Federal Custody is **DENIED**, and the Clerk is **ORDERED** to enter judgment dismissing this case with prejudice.